UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA ROSENBAUM,<br><br>        Plaintiff,<br><br>  -against-<br><br>BAIS YAAKOV DRAV MEIR, and MICHAEL LEVI, individually,<br><br>        Defendants. | **AMENDED COMPLAINT**<br><br><br>**Docket No.: 20-cv-4520 (WFK)(RER)**<br><br><br>Jury Trial Demanded |

  LISA ROSENBAUM ("Plaintiff"), by and through her attorneys, STEVENSON MARINO LLP, as and for her Amended Complaint against BAIS YAAKOV DRAV MEIR d/b/a Beth Jacob Day School ("Beth Jacob") and MICHAEL LEVI, individually (collectively, the "Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

  1. This is a civil action for damages and equitable relief based upon violations that Defendants committed of Plaintiff's rights guaranteed to her by: (i) the prompt payment requirement of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a); (ii) the anti-retaliation provisions of the FLSA, 29 U.S.C. § 215(a)(3); (iii) one of the anti-retaliation provisions of the New York Labor Law ("NYLL"), NYLL § 215(1)(a); (iv) the NYLL's requirement that employers make timely payments according to the terms and conditions of employment, § 191(d) and § 198(1-a); (v) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); and (vi) any other claim(s) that can be inferred from the facts set forth herein.

2. Plaintiff, who worked for Defendants as a secretary for fifteen years, made multiple good faith complaints about Defendants' failure to pay her wages and as a result, Defendants retaliated by terminating her employment in violation of the FLSA and the NYLL. Defendants then withheld Plaintiff's outstanding wages after Plaintiff made a complaint under the law through counsel and, therefore, failed to pay her in accordance with the agreed-upon terms of compensation.

3. Lastly, following the filing of the instant action, Defendants retaliated against Plaintiff by threatening her children's ability to marry within the Jewish community, as well as commencing an action in Rabbinical Court against Plaintiff without her consent and served her with a summons to appear that warned her of consequences for continuing to pursue her actions in "secular" court in violation of the FLSA and NYLL.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred in Brooklyn, which is within this judicial district.

## PARTIES

6. At all relevant times herein, Plaintiff worked for Defendants in New York and was an "employee" entitled to protection as defined by the FLSA and the NYLL.

7. At all relevant times herein, Beth Jacob was and is a not-for-profit corporation with its principal place of business located at 85 Parkville Avenue, Brooklyn, New York 11230.

8. At all relevant times herein, Defendant Levi was and is the Principal of Beth Jacob. In this role, Defendant Levi personally managed and oversaw the day-to-day operations of Beth Jacob.

9. At all relevant times herein, all Defendants were and are "employers" within the meaning of the FLSA and the NYLL. Additionally, Beth Jacob's qualifying annual business exceeded and exceeds $500,000.00, and Beth Jacob was and is engaged in interstate commerce within the meaning of the FLSA, as it employs two or more employees and used and uses supplies and furniture in the course of its business, such as chairs, tables, and pencils, which originate in states other than New York, the combination of which subjects Defendants to the FLSA's anti-retaliation requirements as an enterprise.

## BACKGROUND FACTS

10. In February 2005, Beth Jacob hired Plaintiff to work in the role as a secretary at its school located at 85 Parkville Avenue, Brooklyn, New York 11230. Plaintiff served in that role until Defendant Levi terminated her employment on June 8, 2020.

11. During her lengthy tenure, Plaintiff served as Beth Jacob's full-time secretary, performing administrative tasks for Defendants such as handling phone calls, taking messages, editing the weekly newsletter, and assisting students and teachers.

12. For her work at Beth Jacob, Defendants paid Plaintiff an annual salary of $63,610.96, which according to the terms of Plaintiff's employment, was broken down as follows: (1) one weekly payment of $699.34 for ten months; (2) one weekly payment of $325.00 for ten months allocated for "groceries" to a supermarket affiliated with Beth Jacob; (3) and one monthly rent payment of $1545.00, which according to the agreed-upon terms of employment between the

parties was earned over the ten-month school period and prorated over a twelve-month period to be paid on the first day of every month.

13. On March 18, 2020, Beth Jacob temporarily closed due to the public health emergency caused by the Covid-19 virus pandemic.

14. Prior to its closure, Defendants paid Ms. Rosenbaum her weekly wages for the workweeks ending March 20 and March 27, 2020, which both included her payments of $699.00 and $325.00.

15. Following Beth Jacob's closure, as Defendants' salaried employee, Plaintiff remained ready, willing, and able to work and as explained below, Plaintiff did in fact perform work on April 26, 2020 at the school, at the direction of Defendant Levi.

16. For the week ending April 3, 2020, Defendants failed to timely pay Plaintiff her weekly wages according to the terms of her employment. Plaintiff, faced with the inability to pay her rent, contacted Defendant Levi on April 5, 2020, to inquire about Defendants' failure to pay her wages.

17. On April 7, 2020, Plaintiff received two checks from Defendants, each in the amount of $699.00, but failed to pay her weekly payment of $325.00. Defendants additionally failed to pay her the monthly rent check of $1,545.00.

18. By April 21, 2020, Defendants now owed Plaintiff $3,219.00 after having failed to make any payments for the workweeks ending April 10 and April 17, 2020. Doubtful that she would receive any future wages, Plaintiff filed for unemployment on or about April 21, 2020 for the weeks of April 10 and April 17, 2020.

19. On April 26, 2020, Plaintiff worked from 9:00 a.m. until 4:00 p.m. at the school by performing various tasks at the direction of Defendant Levi, including handing out books to

students and taking phone calls from students' parents to coordinate the future remote learning plan.

20. On May 4, 2020, Gitty Wercberger, Defendants' bookkeeper, who had been unavailable due to illness for the month of April, contacted Plaintiff to inform her that she was working with Beth Jacob's administrator, Rabbi Yonah Gewirtz, to correct Beth Jacob's payroll issues in order to provide Plaintiff with the outstanding wages owed to Plaintiff. Ms. Wercberger also informed Plaintiff that Rabbi Gewirtz received a letter from the New York State Department of Labor ("DOL") concerning her claim for unemployment.

21. On May 6, 2020, Rabbi Gewirtz contacted Plaintiff to inform her that he spoke with the DOL and straightened out the situation with the agency and provided her instructions about the changes she needs to make on her end of the DOL's online portal.

22. On May 8, 2020, Defendants provided Plaintiff with an envelope containing her then past-due wages. Notably, the payment on May 8, 2020, did not include a check for Plaintiff's wages due for the workweek ending May 8, 2020.

23. Defendants also failed to remit pay checks for the following two paydays that were due immediately after May 8, 2020, the checks due May 15 and May 22, 2020. As a result, on or around May 22, 2020, Plaintiff called both Rabbi Gewirtz and Defendant Levi, leaving voicemails with each to inform Defendants that Beth Jacob once again failed to pay her the wages lawfully owed to her.

24. Plaintiff reached out to Ms. Wercberger on or around May 22, 2020, concerning the unpaid wages, to which Ms. Wercberger responded that there must be an error due to problems with the mail.

25. On June 1, 2020, Ms. Wercberger informed Plaintiff that Beth Jacob would deliver Plaintiff's outstanding wages immediately. Ms. Wercberger additionally confirmed that the outstanding wages would be paid to her less the amount that she received through unemployment benefits, at the direction of Defendant Levi and Rabbi Gewirtz.

26. On June 8, 2020, after still not receiving her outstanding wages despite the representation made by Ms. Wercberger, Plaintiff called Defendant Levi directly, resulting in a twenty minute phone call during which Plaintiff made yet another good faith complaint about the nonpayment of her wages, which now additionally included her outstanding June 1 rent payment.

27. During the June 8, 2020 call, Defendant Levi berated Plaintiff about her insistent complaining about her unpaid wages. Additionally, Defendant Levi emphasized that when Plaintiff called him initially about the unpaid wages on April 5, 2020, he considered it to be equivalent to Plaintiff telling him to "drop dead." Furthermore, Defendant Levi repeatedly told Plaintiff that she had "unemployed herself" as a result of her complaints to him about her unpaid wages, and that as of that date (i.e., June 8, 2020), Defendants were terminating her employment with Beth Jacob as a result of her complaints about Defendants' continued failure to pay her wages. Defendant Levi concluded by telling Plaintiff that she would be paid up until the end of June 2020. The foregoing termination caused and continues to cause Plaintiff great mental distress/anxiety.

28. On July 15, 2020, Plaintiff hired counsel, who served Defendants with a letter on behalf of Plaintiff alleging violations of the NYLL concerning Defendants' decision to terminate Plaintiff based upon her good faith complaint about Defendants' failure to timely pay her wages. As a result of her good faith complaint, Defendants committed an additional act of retaliation by withholding from her the prorated portions of her wages designated for rent, due to her on August 1, 2020 and September 1, 2020, representing $3,090.00 in unpaid wages.

29. As of the date of this Complaint, Defendants have failed to pay $3,090.00, representing Plaintiff's August 1 and September 1, 2020 wages designated for rent based on the parties' established payday. As a result, Defendants failed to timely pay these wages in accordance with Defendants' and Plaintiff's agreed-upon terms of Plaintiff's employment.

30. Throughout her employment during the relevant period of this action, on each occasion when Defendants paid Plaintiff, Defendants failed to furnish Plaintiff with a wage statement that accurately stated Plaintiff's actual number of hours worked in a week, Plaintiff's regular rate of pay, Plaintiff's overtime rate of pay, and the basis for computing Plaintiff's straight or overtime rates of pay.

31. On September 24, 2020, Plaintiff filed the instant action asserting, *inter alia*, retaliation claims under the FLSA and NYLL. October 20, 2020, Plaintiff served Defendants with copies of the summons and complaint.

32. On October 21, 2020, Wercberger called Plaintiff and represented to Plaintiff that she was calling on behalf of Defendant Levi. Wercberger encouraged Plaintiff to settle the matter in Rabbinical Court, also known as a "beth din." After Plaintiff stated she was represented by counsel and was relying upon counsel's advice, Wercberger then threatened Plaintiff by reminding her that Plaintiff had "children to marry off," a social warning that Plaintiff's pursuit of her claims would result in other people in the community refusing to marry her children once word gets out of her actions. To make this point clear, Wercberger stated to Plaintiff that she "has not told anyone about this *yet*." Plaintiff perceived this as a threat to dissuade her from continuing her lawsuit involving her claims under the FLSA and NYLL.

33. On October 22, 2020, Defendant Levi emailed Rabbi Scherman and Plaintiff, requesting "advice about how to proceed with finding a Rav to settle the dispute." On this same

7

date, Rabbi Scherman responded to Defendant Levi, copying Plaintiff to the email, stating that "[i]f both parties agree to resolve the dispute at our beis din, we can coordinate an appointment."

34. Also on October 22, 2020, Plaintiff, through counsel, sent correspondence to Rabbi Scherman to notify him that Plaintiff declined to consent to appear for a beth din and that her decision was final. Plaintiff's counsel additionally sent correspondence to Defendants' counsel to cease and desist all forms of harassment and threats as to Plaintiff's standing in her community, and that Plaintiff had chosen to have the matter adjudicated in federal court.

35. On or around November 12, 2020, *despite being on notice of Plaintiff's refusal to appear for a beth din,*, Defendant Levi on behalf of Beth Jacob, instituted an action in Rabbinical Court of Kolel Tartikov ("Beth Din"), located at 1452-55 Street, Brooklyn, New York *without her consent*.

36. On November 12, 2020, Plaintiff received a summons from the Beth Din asking Plaintiff to appear on November 19, 2020 at 3:00 p.m., in order for the Beth Din to preside over the claims that Plaintiff brought in the instant action before this Court.

37. In the summons, Plaintiff was put on warning that continuing to proceed in this Court would result in serious consequences. Specifically, the summons stated that:

> NOTE: In regard to the charges brought against the plaintiff in the secular courts. The plaintiff is willing and ready to discuss all claims and arguments between you at any Beit Din accepted by both parties. Therefore, here in the name of Beit Din with **WARNING OF BEIT DIN** according to Jewish law " Jewish individuals are forbidden to litigate in secular courts without consent of Beit Din" as the severity of this explained in (Source provided), and the remnants of Israel will not do an unjust act.

38. In addition to the "Warning of Beit Din," which states she is forbidden under Jewish law to proceed in this Court, Defendants' threat is intended to intimidate Plaintiff from pursuing her FLSA and NYLL claims because as a result of Plaintiff failing to appear after three

8

summonses, the Rabbinical Court would issue Plaintiff a "siruv," which is a form of contempt of court order issued by a beth din. In the Jewish community a siruv acts as a black mark on an individual's ability to get employment within the community. Thus, as Defendants know Plaintiff to be well aware, the result of the siruv that Defendants are attempting to secure against Plaintiff would result in serious economic, religious, and personal implications in her community. These actions taken by Defendants as a direct result of Plaintiff engaging in protected activity under the FLSA and the NYLL by filing in the instant action.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Issue Prompt Payment Under the FLSA*

39. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

40. 29 U.S.C. 206(a) requires that employers promptly pay their employees. *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998) (noting that "courts have long interpreted the [FLSA] to include a prompt payment requirement" that "requires wages to be paid in a timely fashion").

41. As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff is an employee within the meaning of the FLSA.

42. As also described above, Defendants and Plaintiff had an agreement to pay Plaintiff wages according to a well-established schedule, Defendants missed payments on multiple occasions without any legitimate business reason causing unreasonable delay in the payment of Plaintiff's wages and thus failed to pay her wages in a timely fashion.

43. Plaintiff is entitled to be paid in a timely fashion and Defendants are required to promptly pay Plaintiff her wages.

44. Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the FLSA's provisions.

9

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
*Retaliation in Violation of the FLSA*

45. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

46. 29 U.S.C. § 215(a)(3) prohibits employers from discharging or in any other manner discriminating against an employee because such employee has filed any complaint relating to an employer's violation of the FLSA. *See Greathouse v. JHS Sec. Ins.*, 784 F.3d 105, 115 (2d Cir. 2015) (holding that § 215(a)(3) "does not restrict its protections to employees who file formal, written complaints with governmental agencies" and "encompass[es] oral complaints made to employers in a context that makes the assertion of rights plain.").

47. As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff is an employee within the meaning of the FLSA.

48. As also described above, after Plaintiff engaged in activity protected under the FLSA, Defendants retaliated by terminating her employment and withholding her outstanding wages owed. Additionally, after Plaintiff engaged in protected activity by filing the instant action asserting FLSA claims against Defendants, Defendants retaliated by threatening her family's future within the Jewish community, as well as proceeding with an "action" in Rabbinical Court seeking to dissuade her from pursuing her rights under the FLSA. The "action" pursued in Rabbinical Court, when Plaintiff ignores it, will result in Plaintiff's reputation being permanently tarnished within the Jewish community.

49. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, economic harm, for which Plaintiff is entitled to an award of monetary damages and other relief.

50. Plaintiff is also entitled to compensatory damages, punitive damages, liquidated damages, and attorneys' fees for Defendants' violations of the FLSA's anti-retaliation provisions.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
*Retaliation in Violation of the NYLL*

51. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

52. NYLL § 215(1)(a) prohibits employers from discharging or in any other manner discriminating against an employee because such employee has made a complaint to his or her employer because the employer has engaged in conduct or the employee reasonably believes that the employer engaged in conduct that violates the NYLL, or because such employee has otherwise excised his or her rights under the NYLL.

53. As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

54. As also described above, after Plaintiff engaged in activity protected under the NYLL, Defendants retaliated by terminating her employment and withholding her outstanding wages owed. Additionally, after Plaintiff engaged in protected activity by filing the instant action asserting NYLL claims against Defendants, Defendants retaliated by threatening her family's future within the Jewish community, as well as proceeding with an "action" in Rabbinical Court seeking to dissuade her from pursuing her rights under the NYLL. The "action" pursued in Rabbinical Court, when Plaintiff ignores it, will result in Plaintiff's reputation being permanently tarnished within the Jewish community.

55. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, economic harm, for which Plaintiff is entitled to an award of monetary damages and other relief.

56. Plaintiff is also entitled to compensatory damages, punitive damages, liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's anti-retaliation provisions.

57. At or before the filing of this Complaint, Plaintiff has served notice of this action upon the Office of the New York State Attorney General pursuant to NYLL § 215(b)(2), thereby advising the aforementioned of his claim for retaliation under Section 215 of the NYLL.

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Pay Timely Wages in Under the NYLL*

58. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

59. NYLL § 191(d) provides that a worker shall be paid the wages earned in accordance with the agreed-upon terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer.

60. NYLL § 198(1-a) provides that "in any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the [CPLR], and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due."

61. As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

62. As also described above, Defendants and Plaintiff had an agreement to pay Plaintiff wages according to established terms between the parties and Defendants failed to pay Plaintiff according to these terms.

63. Plaintiff is entitled to her wages in accordance with the agreed-upon terms of her employment.

64. Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's provisions.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

65. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

66. NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

67. As described above, Defendants, on each payday, failed to furnish Plaintiff with accurate wage statements containing the criteria required under the NYLL, including improperly classifying payments as groceries and rent instead of wages.

68. Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff in the amount of $250 for each workday after the violation occurred, up to a statutory cap of $5,000.

### DEMAND FOR A JURY TRIAL

69. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

  b. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

  c. Granting Plaintiff all damages sustained as a result of Defendants' retaliatory conduct, including compensatory damages for past and future lost compensation and benefits that Plaintiff would have received but for Defendants' conduct, including but not limited to back pay and front pay, whether legal or equitable in nature, as well as for emotional distress and/or mental anguish in connection with her claims;

  d. Granting Plaintiff all damages that Plaintiff has sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff would have received but for Defendants' unlawful payment practices;

  e. Granting Plaintiff liquidated damages and any other statutory penalties as recoverable under the FLSA and the NYLL;

  f. Granting an award of punitive damages, to the extent permitted by law, commensurate with Defendants' ability to pay;

  g. Awarding Plaintiff her reasonable attorneys' fees, as well as her costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

  h. Pre-judgment and post-judgment interest, as provided by law; and

      i.      Granting Plaintiff such other and further relief as this Court finds necessary and proper.

Dated: New York, New York
           November 17, 2020

                                                  Respectfully submitted,

                                                  STEVENSON MARINO LLP
                                                  *Attorneys for Plaintiff*
                                                  75 Maiden Lane, Suite 402
                                                  New York, New York 10038
                                                  (212) 939-7229

                                By:    _____
                                                  Jeffrey R. Maguire, Esq. (JM4821)