UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LISA ROSENBAUM,

                     Plaintiff,

        -against-

BAIS YAAKOV DRAV MEIR, and MICHAEL LEVI,
individually,

                Defendants.

Civil Action No.:
20-CV-4520 (WFK) (RER)


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**



**STEVENSON MARINO LLP**


Jeffrey R. Maguire
75 Maiden Lane, Suite 402
New York, New York 10038
(212) 939-7229
(212) 531-6129
Attorneys for Plaintiff




DATE OF SERVICE: FEBRUARY 17, 2021

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ……………………………………………..……1

STATEMENT OF FACTS ..................................................................................... 3

I.      PLAINTIFF'S FIRST RETALIATION CLAIM ...................................... 3

II.     PLAINTIFF'S SECOND RETALIATION CLAIM.................................. 6

LEGAL STANDARD ........................................................................................... 8

ARGUMENT ........................................................................................................ 9

I.      PLAINTIFF'S ALLEGATIONS ESTABLISH A CLAIM UNDER THE FLSA AND THE NYLL ...................................................................................................... 9

II.     PLAINTIFF'S DETAILED FACTUAL ALLEGATIONS ADEQUATELY ESTABLISHES AN FLSA RETALIATION CLAIM BASED ON HER TERMINATION RESULTING FROM COMPLAINT OF NON-PAYMENT OF WAGES................................................................................................. 12

        A.      Participation in a Protected Activity Known to the Defendants ................... 13

                1.      *Plaintiff sufficiently alleges unlawful conduct protected by the FLSA*…..13

                        (a)     First alleged act of retaliation…………………………………13

                        (b)     Second alleged act of retaliation………………………….…...16

                2.      *Plaintiff's multiple complaints constitute protected activity to put a reasonable employer on notice of conduct in violation of the FLSA*…….17

                        (a)     First alleged act of retaliation…………………………………17

                        (b)     Second alleged act of retaliation……………………………...21

        B.      Employment Action Disadvantaging Plaintiff Causally Related to Complaint ........................................................................... 23

III.    PLAINTIFF ESTABLISHES A RETALIATION CLAIM UNDER THE NYLL................................................................................................... 24

CONCLUSION ................................................................................................ 26

ii

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Armour & Co. v. Wantock*,
   323 U.S. 126 (1944) ................................................................................ 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................. 8

*Baguidy v. Boro Transit Inc.*,
   283 F. Supp. 3d 14 (E.D.N.Y. Sept. 30, 2017) ........................................ 12, 14, 18

*Belizaire v. RAV Investigative & Sec. Servs. Ltd.*,
   61 F. Supp. 3d 336 (S.D.N.Y. 2014) ........................................................ 3, 14, 24

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................. 8

*Bergman v. Kids by the Bunch Too, Ltd.*,
   2016 WL 4991549 (E.D.N.Y. May 10, 2016) ........................................... 22

*Brass v. Am. Film Technologies*, *Inc.*,
   987 F.2d 142 (2d Cir. 1993) ..................................................................... 9

*Cabrera v. CBS Corp.*,
   2018 WL 1225260 (S.D.N.Y. Feb. 26, 2018) ...................................... 13, 19, 20, 21

*Chen v. St. Beat Sportswear, Inc.*,
   226 F. Supp. 2d 355 (E.D.N.Y. 2002) ...................................................... 9

*Coley v. Vannguard Urban Improvement Assoc.*, *Inc.*,
   2018 WL 1513628 (E.D.N.Y. Mar. 27, 2018) ........................................... 14

*Connolly v. City of New York*,
   2020 WL 5553843 (E.D.N.Y. Aug. 18, 2020) ........................................... 23

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 697 (E.D.N.Y. 2017) .................................................................. 9

*Dunn v. Sederakis*,
   143 F. Supp. 3d 102 (S.D.N.Y. 2015) ...................................................... 18

*Greathouse v. JHS Sec. Inc.*,
  784 F.3d 105 (2d Cir. 2015) .......................................................................................... *passim*

*Hart v. Rick's Cabaret Int'l Inc.*,
  2010 WL 5297221 (S.D.N.Y. Dec. 20, 2010) .................................................................... 15, 16

*Jiaren Wei v. Lingtou Zhengs Corp.*,
  2015 WL 739943 (E.D.N.Y. Feb. 20, 2015) ........................................................................ 9, 10

*Kasten v. Saint-Gobain Performance Plastics*,
  561 U.S. 1 (2011) ................................................................................................... 12, 17, 18, 20

*Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*,
  842 F.2d 590 (2d Cir. 1988) ....................................................................................................... 13

*Martinez v. Alimentos Saludables Corp.*,
  2017 WL 5033650 (E.D.N.Y. Sept. 22, 2017) ...................................................................... 1, 10

*Matson v. Bd. of Educ. Of City Sch. Dist. of N.Y.*,
  631 F.3d 57 (2d Cir. 2011) ......................................................................................................... 20

*Mitchell v. Robert DeMario Jewelry, Inc.*,
  361 U.S. 288 (1960) .................................................................................................................... 12

*Mullins v. City of N.Y.*,
  626 F.3d 47 (2d Cir. 2010) ......................................................................................................... 13

*Nakahata v. New York-Presbyterian Healthcare System, Inc.*,
  723 F.3d 192 (2d Cir. 2006) ......................................................................................................... 9

*Porter v. MooreGroup Corp.*,
  2020 WL 32434 (E.D.N.Y. Jan. 2, 2020) ............................................................................ 16, 23

*Reilly v. Quickcare Medical, P.C.*,
  2014 WL 2571642 (D.N.J. June 9, 2014) .................................................................................. 18

*Rogers v. City of Troy*,
  148 F.3d 52, 55 (2d Cir. 1998) ........................................................................................ 2, 13, 14

*Rosenman Family, LLC v. Picard*,
  395 Fed. App'x. 766 (2d Cir. 2010) ...................................................................................... 9, 18

iv

*Sarit v. Westside Tomato, Inc.*,
  2020 WL 1891983 (S.D.N.Y. Apr. 16, 2020) ....................................................... *passim*

*Thompson v. Eldorado Coffee Roasters Ltd.*,
  246 F. Supp. 3d 697 (E.D.N.Y. 2017) ........................................................ 9, 19, 20

*United States v. Klinghoffer Bros. Realty Corp.*,
  285 F.2d 487 (2d Cir. 1960) ........................................................................ 14

*Vega v. Hempstead Union Free Sch. Dist.*,
  801 F.3d 72 (2d Cir. 2015) ......................................................................... 20

*Velazquez v. Yoh Servs., LLC*,
  803 F. App'x 515 (2d Cir. 2020) ............................................................... 2, 13

*Zann Kwan v. Andalex Grp. LLC*,
  737 F.3d 834 (2d Cir. 2013) ...................................................................... 23

**Statutes**

29 C.F.R. § 541.602 ........................................................................................ 21

29 U.S.C. § 203(a) .................................................................................... 12, 17

29 U.S.C. § 203(e)(1) ..................................................................................... 10

29 U.S.C. § 206(b) .......................................................................................... 13

29 U.S.C. § 215(a)(3) ............................................................................... *passim*

NYLL § 651(6) ............................................................................................... 10

NYLL § 190(2) ............................................................................................... 10

NYLL § 191(d) ............................................................................................... 24

NYLL § 195(3) ............................................................................................. 3, 25

NYLL § 215(1)(a)(i) ....................................................................................... 25

**Rules**

Fed. R. Civ. P. 8(a)(2) ...................................................................................... 8

Rule 12(b)(6)......................................................................................................... *passim*

## PRELIMINARY STATEMENT

On September 24, 2020, Plaintiff, Lisa Rosenbaum, commenced this action asserting retaliation claims pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against her former employers, Defendants Bais Yaakov Drav Meir ("Beth Jacob"), and Michael Levi (collectively, as "Defendants"). On November 17, 2020, Plaintiff filed an Amended Complaint, asserting a new post-employment retaliation claim against Defendants under the FLSA and NYLL. On January 18, 2021, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint ("Defendants' Motion") pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 12(b)(6). Plaintiff now submits this Memorandum of Law in Opposition to Defendants' Motion.

First, Defendants argue that Plaintiff's Amended Complaint must be dismissed because Plaintiff failed to plead that she performed compensable work under the FLSA and the NYLL. Fatal to Defendants' argument, however, is that to state a claim under the FLSA, a plaintiff must plead that she is an employee, that defendant is an employer, and that plaintiff is not exempted from the FLSA. *Sarit v. Westside Tomato, Inc.*, 2020 WL 1891983, at *4 (S.D.N.Y. Apr. 16, 2020). The same is true for Plaintiff's NYLL claims, as Plaintiff need only plead that she is a non-exempt employee and that Defendants are employers, as the volume of business requirement is absent from the NYLL. *Martinez v. Alimentos Saludables Corp.*, 2017 WL 5033650, at *9 (E.D.N.Y. Sept. 22, 2017). Because Plaintiff sufficiently pleads factual allegations under both federal and state law, Plaintiff easily establishes that she is a covered employee entitled to protections under both the FLSA and the NYLL.

Second, Defendants argue that Plaintiff failed to allege a federal retaliation claim because Plaintiff failed to plead that Defendants violated the FLSA. This argument ignores the well-

1

established Second Circuit law that the FLSA contains a prompt payment requirement that mandates that employers pay their employees' wages in a timely fashion. *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998). When taken as true, Plaintiff's allegations demonstrate FLSA-prohibited conduct, and the Second Circuit has made clear that a plaintiff need not prove the underlying FLSA claim to establish a claim for retaliation. *See Velazquez v. Yoh Servs., LLC*, 803 F. App'x 515, 517 (2d Cir. 2020). Thus, the Court should not dismiss Plaintiff's claims on this basis. Moreover, Defendants wholly ignore Plaintiff's additional factual allegations of retaliation (necessitating the filing of the Amended Complaint), which concerned Defendants' retaliatory acts that occurred after Plaintiff filed the Complaint. Those actions, as explained below, involved Defendants' efforts to force Plaintiff to withdraw her Complaint from this Court by threatening her standing, reputation, and economic and personal future within the Jewish community. Defendants cannot – and do not – contend the filing of the instant action does not constitute a protected activity under the FLSA and their silence regarding these post-filing retaliatory actions is deafening.

Third, Defendants argue that even if Plaintiff did allege prohibited conduct under the FLSA, Plaintiff still failed to plead an FLSA retaliation claim because she did not plead that she engaged in protected activity that Defendants reasonably understood to constitute a protected complaint. To the contrary, at the motion to dismiss stage, Plaintiff provides detailed factual allegations of three separate complaints to her employer of unlawful nonpayment of wages that she alleges Defendants informed her at the time resulted in her "unemploy[ing] herself." The Second Circuit has held that a plaintiff need not specifically invoke the FLSA by name to make a complaint. *See Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015). Because Defendants' arguments about what Defendants' "understood" is inappropriate for a Rule 12(b)(6)

dismissal, the Court should deny Defendants' motion to dismiss Plaintiff's FLSA retaliation claims.

Fourth, and lastly, Defendants argue that Plaintiff's NYLL claims should be dismissed because Plaintiff likewise fails to allege sufficient claims under state law. Unlike the FLSA's prompt payment requirement, however, the NYLL explicitly provides that payment must be made in a timely manner. Moreover, courts construe the NYLL's retaliation provision more broadly than the FLSA's retaliation provision. *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 353 (S.D.N.Y. 2014). As explained *infra*, Plaintiff easily meets her burden to plead sufficient allegations in connection with her NYLL retaliation claim as well. Moreover, Plaintiff adequately pleads a claim for failure to provide accurate wage statements under NYLL § 195(3).

Thus, for the reasons mentioned above, and as will be discussed in more detail below, the Court should deny Defendants' Motion in its entirety.

## STATEMENT OF FACTS

## I.    PLAINTIFF'S FIRST RETALIATION CLAIM

In February 2005, Beth Jacob hired Plaintiff to work in the role as a secretary at its school located at 85 Parkville Avenue, Brooklyn, New York 11230. *See* Plaintiff's Amended Complaint, (hereinafter, "Am. Comp."), ¶ 10.[1] Plaintiff was Defendants' employee and Defendants qualifying annual business exceeded and exceeds $500,000.00, and Beth Jacob was and is engaged in interstate commerce within the meaning of the FLSA, as it employs two or more employees and used and uses supplies and furniture in the course of its business, such as chairs, tables, and pencils, which originate in states other than New York. *See* Am. Comp., ¶¶ 6, 9. Defendant Levi was and is the Principal of Beth Jacob. *See* Am. Comp., ¶ 8. In this role, Defendant Levi personally

---

[1] A true and correct copy of the Amended Complaint is attached to the Declaration of Jeffery R. Maguire as **Exhibit A**.

3

managed and oversaw the day-to-day operations of Beth Jacob. *See* Am. Comp., ¶8. During her lengthy tenure, Plaintiff served as Beth Jacob's full-time secretary, performing administrative tasks for Defendants such as handling phone calls, taking messages, editing the weekly newsletter, and assisting students and teachers. *See* Am. Comp., ¶ 11.

Plaintiff worked for Defendants as a secretary for over fifteen years until June 8, 2020, when Defendant Levi terminated her employment. *See* Am. Comp., ¶ 10. For her work, Defendants paid Plaintiff a $63,610.96 annual salary, which according to the terms of Plaintiff's employment, was broken down as follows: (1) one weekly payment of $699.34 for ten months; (2) one weekly payment of $325.00 for ten months allocated for "groceries" supermarket affiliated with Beth Jacob; (3) and one monthly payment of $1,545.00 allocated for "rent", which according to the agreed-upon terms of employment between the parties, was earned over the ten-month school period and prorated over a twelve-month period to be paid on the first day of every month. *See* Am. Comp., ¶ 11. After Defendants failed to pay her wages for the week ending April 3, 2020, Plaintiff contacted Defendants on April 5, 2020, to inquire about her wages in light of not being able to pay her rent. *See* Am. Comp., ¶ 16. This inquiry resulted in Plaintiff receiving two checks two days later on April 7, 2020, but failed to include all of the wages Defendants owed her. *See* Am. Comp., ¶ 17.

On or about April 21, 2020, after Defendants failed to pay her wages, Plaintiff filed for unemployment for the weeks of April 10 and April 17, 2020. *See* Am. Comp., ¶ 18. On April 26, 2020, Plaintiff worked from 9:00 a.m. until 4:00 p.m. at the school by performing various tasks at the direction of Defendant Levi, including handing out books to students and taking phone calls from students' parents to coordinate the future remote learning plan. *See* Am. Comp., ¶ 19. On May 4, 2020, Defendants' bookkeeper contacted Plaintiff to inform her that she was working with

Beth Jacob's administrator, Rabbi Yonah Gewirtz, to correct Beth Jacob's payroll issues in order to provide Plaintiff with the outstanding wages owed to Plaintiff. *See* Am. Comp., ¶ 20. On May 6, 2020, Rabbi Gewirtz contacted Plaintiff to inform her that he spoke with the DOL and straightened out the situation with the agency and provided her instructions about the changes she needs to make on her end of the DOL's online portal. *See* Am. Comp., ¶ 21. On May 8, 2020, Defendants provided Plaintiff with an envelope containing her then past-due wages, but the payment did not include a check for Plaintiff's wages due for the workweek ending May 8, 2020. *See* Am. Comp., ¶ 22. Defendants also failed to remit pay checks on the following two paydays that were due immediately after May 8, 2020, the checks due May 15 and May 22, 2020. *See* Am. Comp., ¶ 23.

As a result of Defendants again failing to pay her wages, on or around May 22, 2020, Plaintiff called both Rabbi Gewirtz and Defendant Levi, leaving voicemails with each to inform Defendants that Beth Jacob once again failed to pay her the wages lawfully owed to her. *See* Am. Comp., ¶ 23. Defendants' response through their bookkeeper was that there must be a problem due to the mail. *See* Am. Comp., ¶ 24. On June 1, 2020, Ms. Wercberger informed Plaintiff that Beth Jacob would deliver Plaintiff's outstanding wages immediately. *See* Am. Comp., ¶ 25. Ms. Wercberger additionally confirmed that the outstanding wages would be paid to her less the amount that she received through unemployment benefits, at the direction of Defendant Levi and Rabbi Gewirtz. *See* Am. Comp., ¶ 25.

On June 8, 2020, after still not receiving her outstanding wages despite the representation made by Ms. Wercberger, Plaintiff called Defendant Levi directly, resulting in a twenty-minute phone call during which Plaintiff made yet another good faith complaint about the nonpayment of her wages, which now additionally included her outstanding June 1 rent payment. *See* Am. Comp.,

¶ 26. During the June 8, 2020 call, Defendant Levi berated Plaintiff about her insistent complaining about her unpaid wages. *See* Am. Comp., ¶ 27. Additionally, Defendant Levi emphasized that when Plaintiff called him initially about the unpaid wages on April 5, 2020, he considered it to be equivalent to Plaintiff telling him to "drop dead." *See* Am. Comp., ¶ 27. Furthermore, Defendant Levi repeatedly told Plaintiff that she had "unemployed herself" as a result of her complaints to him about her unpaid wages, and that as of that date (i.e., June 8, 2020), Defendants were terminating her employment with Beth Jacob. *See* Am. Comp., ¶ 27. Defendant Levi concluded by telling Plaintiff that she would be paid up until the end of June 2020. *See* Am. Comp., ¶ 27.

## II.   PLAINTIFF'S SECOND RETALIATION CLAIM

On September 24, 2020, Plaintiff filed the instant action asserting, *inter alia*, retaliation claims under the FLSA and NYLL. On October 20, 2020, Plaintiff served Defendants with copies of the summons and complaint. *See* Am. Comp., ¶ 31. On October 21, 2020, Wercberger called Plaintiff and represented to Plaintiff that she was calling on behalf of Defendant Levi. *See* Am. Comp., ¶ 32. Wercberger encouraged Plaintiff to settle the matter in Rabbinical Court, also known as a "beth din." *See* Am. Comp., ¶ 32. After Plaintiff stated she was represented by counsel and was relying upon counsel's advice, Wercberger then threatened Plaintiff by reminding her that Plaintiff had "children to marry off," a social warning that Plaintiff's pursuit of her claims would result in other people in the community refusing to marry her children once word gets out of her actions. *See* Am. Comp., ¶ 32. To make this point clear, Wercberger stated to Plaintiff that she "has not told anyone about this *yet*." *See* Am. Comp., ¶ 32. Plaintiff perceived this as a threat to dissuade her from continuing her lawsuit involving her claims under the FLSA and NYLL. *See* Am. Comp., ¶ 32.

On October 22, 2020, Defendant Levi emailed Rabbi Scherman and Plaintiff, requesting "advice about how to proceed with finding a Rav to settle the dispute." *See* Am. Comp., ¶ 33. On

this same date, Rabbi Scherman responded to Defendant Levi, copying Plaintiff to the email, stating that "[i]f both parties agree to resolve the dispute at our beis din, we can coordinate an appointment." *See* Am. Comp., ¶ 33. Also on October 22, 2020, Plaintiff, through counsel, sent correspondence to Rabbi Scherman to notify him that Plaintiff declined to consent to appear for a beth din and that her decision was final. *See* Am. Comp., ¶ 34. Plaintiff's counsel additionally sent correspondence to Defendants' counsel to cease and desist all forms of harassment and threats as to Plaintiff's standing in her community, and that Plaintiff had chosen to have the matter adjudicated in federal court. *See* Am. Comp., ¶ 34.

On or around November 12, 2020, *despite being on notice of Plaintiff's refusal to appear for a beth din*, Defendant Levi on behalf of Beth Jacob, instituted a new action in Rabbinical Court of Kolel Tartikov ("Beth Din"), located at 1452-55 Street, Brooklyn, New York *without her consent*.[2] *See* Am. Comp., ¶ 35. On November 12, 2020, Plaintiff received a summons from the Beth Din requiring Plaintiff to appear on November 19, 2020 at 3:00 p.m., in order for the Beth Din to preside over the claims that Plaintiff brought in the instant action before this Court. *See* Am. Comp., ¶ 36. In the summons, Plaintiff was put on warning that continuing to proceed in this Court would result in serious consequences. Specifically, the summons stated that:

> NOTE: In regard to the charges brought against the plaintiff in the secular courts. The plaintiff is willing and ready to discuss all claims and arguments between you at any Beit Din accepted by both parties. Therefore, here in the name of Beit Din with **WARNING OF BEIT DIN** according to Jewish law "Jewish individuals are forbidden to litigate in secular courts without consent of Beit Din" as the severity of this explained in (Source provided), and the remnants of Israel will not do an unjust act.

---

[2] Notably, the beth din instituted on October 22, 2020, was different from the beth din that Defendants sought to institute through Rabbi Scherman. Presumably, Defendants had to find a second beth din that would pressure Plaintiff due to her lack of consent, where Rabbi Scherman's beth din refused to do so.

*See* Am. Comp., ¶ 37. In addition to the "Warning of Beit Din," which states she is forbidden under Jewish law to proceed in this Court, Defendants' threat is intended to intimidate Plaintiff from pursuing her FLSA and NYLL claims because, as a result of Plaintiff failing to appear after three summonses, the Rabbinical Court would issue Plaintiff a "siruv," which is a form of contempt of court order issued by a beth din. In the Jewish community a siruv acts as a black mark on an individual's ability to get employment and co-exist within the community – effectively rendering such individual an outcast. *See* Am. Comp., ¶ 38. Thus, as Defendants know Plaintiff to be well aware, the siruv would result in serious economic, religious, and personal implications to Plaintiff in her community. Defendants' actions constitute *per se* retaliation for Plaintiff engaging in protected activity under the FLSA and the NYLL by filing the Complaint in federal court. *See* Am. Comp., ¶ 38.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) states that a claim will be dismissed only if it "fail[s] to state a claim upon which relief can be granted." In order to state a claim for relief, Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Importantly, Rule 8 does not require "detailed factual allegations," but only that the statements in the complaint make the claimed violation of law "plausible on its face." *Twombly*, 550 U.S. at 570. This "plausibility" standard is satisfied by a complaint that contains enough factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

It is well settled that on a motion to dismiss, "a court must accept all factual allegations in the complaint as true, even if the allegations are doubtful in fact," and "draw all reasonable

inferences in favor of the plaintiff." *Rosenman Family, LLC v. Picard*, 395 Fed. Appx. 766, 768 (2d Cir. 2010). "When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), 'the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support therefore.'" *Thompson v. Eldorado Coffee Roasters Ltd.*, 246 F. Supp. 3d 697, 700 (E.D.N.Y. 2017) (Kuntz, *J.*) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 697, 700 (E.D.N.Y. 2017)).

Moreover, on a motion to dismiss, the court's review, as a general matter, is limited to the pleading itself, and the court does not consider matters outside the pleadings. *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 202-03 (2d Cir. 2006). Indeed, as stated with the relevant exceptions, "[t]he court's consideration on a motion to dismiss is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Chen v. St. Beat Sportswear, Inc.*, 226 F. Supp. 2d 355, 358 (E.D.N.Y. 2002) (citing *Brass v. Am. Film Technologies*, *Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

## **ARGUMENT**

## I.   **PLAINTIFF'S ALLEGATIONS ESTABLISH A CLAIM UNDER THE FLSA AND THE NYLL**

As a threshold matter, "[t]o state a claim under the FLSA, a plaintiff must first show that (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Sarit*, 2020 WL 1891983, at *4 (holding that employee stated a claim for violation of FLSA's prompt payment requirement) (internal citations and quotations omitted); *accord Jiaren Wei v. Lingtou Zhengs Corp.*, 2015 WL

739943, at *5 (E.D.N.Y. Feb. 20, 2015). The FLSA defines an "employee" as "any individual employed by an employer." *Jiaren Wei*, 2015 WL 739943, at *5 (citing 29 U.S.C. § 203(e)(1)). The FLSA additionally defines an "employer" as "any person acting directly, or indirectly in the interest of an employer in relation to an employee, and requires employees engaged in interstate commerce . . . whose annual gross volume of sales made or business done is not less than $500,000." *Id*. (citations omitted).

"The same elements are required to prove plaintiff's claim under [the] New York [L]abor [L]aw as under federal law." *Martinez*, 2017 WL 5033650, at *9 (citation omitted). "Thus, to recover under the NYLL, plaintiffs must prove that they were "employees" and that defendants were "employers" as defined by the statute. *Id*. (citation omitted); *see* NYLL § 190(2) (The NYLL defines an "employee" as "any person for hire by an employer in any employment"). Importantly, "[u]nlike the FLSA, the NYLL does not require that a defendant have a certain volume of business to meet its definition of 'employer' to be subject to the law's requirements." *Id*. (citing NYLL § 651(6)) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").

Based on the pleadings in her Amended Complaint, Plaintiff inarguably alleges that she is a covered employee under the FLSA and the NYLL. Plaintiff alleges that she is an "employee" that worked as a full-time secretary, performing administrative tasks for Defendants such as handling phone calls, taking messages, editing the weekly newsletter, and assisting students and teachers. *See* Am. Comp., ¶¶ 6, 11. Plaintiff alleges that she served in this role until Defendants terminated her on June 8, 2020. *See* Am. Comp., ¶ 10. Additionally, Plaintiff alleges in her Amended Complaint that defendant is an enterprise participating in commerce or the production

10

of goods for the purpose of commerce with a volume of business of exceeding $500,000. *See* Am. Comp., ¶ 9. Plaintiff also alleges that Defendant Levi exercised operational and direct control over her and thus was an individual employer. *See* Am. Comp., ¶ 8. Thus, as an initial matter, Plaintiff is a covered employee entitled to protection under the FLSA and NYLL.

Defendants first argue that Plaintiff's Amended Complaint should be dismissed because she failed to perform work under the FLSA and NYLL. *See* Defendants' Motion, pp. 6-7. Defendants support this position by citing to cases that do not assert retaliation claims, but rather deal with the burden of proof for overtime claims at the summary judgment stage. *See* Defendants' Motion, pp. 6-7. This argument fails, however, as Defendants conflate the *prima facie* case to state a claim under the FLSA for the burden of proof to prevail on claim for non-payment of wages. To be clear, Plaintiff must sufficiently plead that she is an employee to assert an FLSA claim, not that she performed work for which she was not compensated. *See Sarit*, 2020 WL 1891983, at *4.

Furthermore, Plaintiff alleges that she worked for Defendants as Beth Jacob's full-time secretary for over fifteen years until June 8, 2020. *See* Am. Comp., ¶¶ 10-11. Even after the school was temporarily closed down, Defendants still required Plaintiff to be ready, willing, and able to work as she alleges that on April 26, 2020, she worked from 9:00 a.m. until 4:00 p.m. at the school by performing various tasks at the direction of Defendant Levi, including handing out books to students and taking phone calls from students' parents to coordinate the future remote learning plan. *See* Am. Comp., ¶ 19.

Accordingly, Plaintiff's allegations, taken as true, are sufficient to state a claim even considering Defendants' misplaced argument because there is no requirement for an employee to show actual work performed under the FLSA or NYLL. Indeed, "[of] course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." *Armour*

11

*& Co. v. Wantock*, 323 U.S. 126, 133 (1944). Thus, Plaintiff does in fact sufficiently plead that she worked for Defendants until June 8, 2020, and any argument that this time is somehow non-compensable is blatantly inappropriate on a Rule 12(b)(6) motion. Again, the fact that Defendants cite only summary judgment cases dealing with minimum wage and overtime claims (and *not* retaliation claims) reveals the lack of merit of Defendants' argument.

## II. PLAINTIFF'S DETAILED FACTUAL ALLEGATIONS ADEQUATELY ESTABLISHES AN FLSA RETALIATION CLAIM BASED ON HER TERMINATION RESULTING FROM COMPLAINT OF NON-PAYMENT OF WAGES

As Plaintiff is covered by the FLSA, she is entitled to assert a retaliation claim under the FLSA. The FLSA makes it unlawful "for any person to discharge or in any manner discriminate against any employee because such employee has filed any complaint . . . related to this chapter." 29 U.S.C. § 215(a)(3).[3] Significantly, "[t]he Second Circuit has 'repeatedly affirmed that he remedial nature of the FLSA warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy.'" *Baguidy v. Boro Transit Inc.*, 283 F. Supp. 3d 14, 30 (E.D.N.Y. Sept. 30, 2017) (quoting *Greathouse*, 784 F.3d at 113-14). As the Second Circuit additionally observed "[b]ecause the government cannot directly monitor every employer's payroll, [the] FLSA also creates an enforcement mechanism that relies in significant part on employees' complaints." *Greathouse*, 784 F.3d at 113 (citing *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)). Indeed, "Congress enacted section 215(a)(3) to 'prevent fear of economic retaliation from inducing workers quietly to accept substandard conditions,' and to foster an atmosphere protective of employees who lodge such complaints." *Id*. (quoting *Kasten v. Saint-Gobain Performance Plastics*, 561 U.S. 1, 131 S. Ct. 1325, 1328 (2011)).

---

[3] "'Person' means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).

To state a claim for retaliation under the FLSA, a plaintiff must allege "(1) participation in protected activity known to the defendant, like the filing of an FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010); *Baguidy*, 283 F. Supp. 3d at 30. Significantly, it is well-settled in the Second Circuit that "to state a claim for retaliation, a plaintiff need not prove that the conduct he protested actually violated the FLSA, but only that he had 'a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Cabrera v. CBS Corp.*, 2018 WL 1225260, at *6 (S.D.N.Y. Feb. 26, 2018) (*quoting Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) and collecting cases)); *see Velazquez*, 803 F. App'x at 517 (collecting cases) ("[i]t is possible for a plaintiff to state a retaliation claim under the FLSA without proving a violation of the statute"). Underlining the appropriate Rule 12(b)(6) burden, the court in *Cabrera* denied a motion to dismiss an FLSA retaliation claim where conduct alleged was "presumptively lawful," but "[a]t the motion to dismiss stage, there is no reason to doubt Plaintiffs' good faith belief, and they plausibly allege facts that, if believed, could support such a belief." *Cabrera*, 2018 WL 1225260, at *6.

A.      **Participation in a Protected Activity Known to the Defendants**

1.      *Plaintiff sufficiently alleges unlawful conduct protected by the FLSA*

(a)      First alleged act of retaliation

The FLSA provides that "every employer shall pay to each of his employees . . . who in any workweek is engaged in the commerce or in the production of goods for commerce . . . not less than minimum wage." *Rogers*, 148 F.3d at 55 (quoting 29 U.S.C. § 206(b)). Crucially, "although the FLSA does not explicitly require that wages be paid on time, the courts have long interpreted the statute to include a prompt payment requirement." *Id*. (citing *United States v.*

*Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960)). "Such a requirement is clearly established by the authorities." *Klinghoffer Bros. Realty Corp.*, 285 F.2d at 491; *see Rogers*, 148 F.3d at 57 (recognizing that "it is clear that the FLSA requires wages to be paid in a timely fashion"). Indeed, "[w]hile the statutory language of the FLSA does not prescribe any particular payment schedule, courts have consistently interpreted Section 206(a) of the statute to include a prompt payment requirement." *Belizaire*, 61 F. Supp. 3d at 353.

Here, Plaintiff sufficiently alleges conduct that is inarguably protected by the FLSA. Plaintiff provides well-detailed allegations that Defendants paid Plaintiff on a salary basis with a specific structure according to the terms of her employment. *See* Am. Comp., ¶ 12. Plaintiff alleges that after paying her wages according to specific terms for approximately fifteen years, Defendants failed to timely pay her wages on April 3, 2020. *See* Am. Comp., ¶ 12. Even after Defendants partially paid Plaintiff after her initial April 5th complaint by belatedly paying her on April 7, 2021 (*see* Am. Comp., ¶¶ 16-17), Plaintiff alleges that Defendants nevertheless again failed to pay her wages in the subsequent weeks on May 22, and June 8, 2021, clearly exhibiting a pattern of non-compliance in violation of the FLSA's prompt payment requirement. *See* Am. Comp., ¶¶ 16, 22-23. According to Plaintiff's allegations, not only did Defendants' failure to pay her wages eventually cause her to file for unemployment as she was clearly left without option after no explanation, but she was forced to complain multiple times due to the repeated prompt payment failure up until her termination on June 8, 2021. *See* Am. Comp., ¶¶ 18, 23, 26.

This case is analogous to *Coley v. Vannguard Urban Improvement Assoc., Inc.*, 2018 WL 1513628, at *5 (E.D.N.Y. Mar. 27, 2018). In *Coley*, the court held that plaintiffs' allegations sufficiently alleged a violation of the FLSA's prompt payment requirement where they alleged that the employer "had not paid the plaintiffs wages earned on their regular pay days." *Id*. The

14

court additionally found defendants admitted "multiple times that Vannguard employees were routinely paid late." *Id*. Here, Plaintiff similarly alleges that Defendants failed to pay her earned wages on her regular payday on multiple occasions. *See* Am. Comp., ¶¶ 16, 18, 22-23. 25-26. Accepting Plaintiff's allegations as true, Defendants routinely paid her late, even following her initial internal complaint on April 5, 2020. *See id*.

Defendants argue that Plaintiff's retaliation claim must fail "because she does not (nor could she) make the basic assertion that she complained about any failure by Defendants to pay her the FLSA's minimum wage." *See* Defendants' Motion, p. 8. Confusingly, Defendants cite to multiple cases that hold that straight-time or gap-time pay is unavailable under the FLSA, even though Plaintiff's Amended Complaint does not seek underpayment of wages. *See* Defendants' Motion, pp. 7-8. Tellingly, despite controlling Second Circuit authority regarding the FLSA's prompt payment requirement, Defendants' motion is completely silent in this regard. *See* Defendants' Motion, *generally*.[4]

Although Defendants cite the *Sarit* case in support of their motion, Defendants conveniently omit the fact that Judge Irizarry *specifically* addressed and rejected an identical argument from the defendants in that case. The court relying upon *Hart v. Rick's Cabaret Int'l Inc.*, 2010 WL 5297221 (S.D.N.Y. Dec. 20, 2010), reiterated that "the court explained that plaintiffs' allegations that they were paid 'no wages whatsoever' for a given time period was sufficient, without more, to plead a violation of the FLSA." *Sarit*, 2020 WL 1891983, at *5 n.9. Indeed, "the court *rejected* defendants' argument that, in order to state a claim under the FLSA, the plaintiffs also had to specifically allege 'the hours that they worked for which they were paid

---

[4] Defendants do mention "prompt payment" once in their title for section I(A), but then fail to mention it again in that section. *See* Defendants' Motion, p. 7.

less than the statutory minimum wage,' and distinguished the cases on which defendants had relied for that proposition. *Id*. (quoting *Hart*, 2010 WL 5297221, at *4) (emphasis in original). The court concluded that "Plaintiff's FLSA and NYLL claims are unlike a typical minimum wage or overtime claim, in which the plaintiff must specifically plead facts such as the number of hours worked, the amount for which she was compensated, and the hours for which she did not receive minimum and/or overtime wages." *Id*. (citation omitted).

In noting that defendant failed to cite any legal argument that a plaintiff must "contain specific allegations as to particular factors [such as how much she earned and whether such hours were compensable]" the court in *Sarit* denied defendant's motion to dismiss labeling such arguments as vague, conclusory, and unpersuasive. *Id*. Because Defendants make the same fatal flaws in this the instant motion, this Court should similarly reject these identical arguments, as Plaintiff sufficiently alleges that Defendants engaged in prohibited conduct under the FLSA.

(b)    Second alleged act of retaliation

Plainly finding no basis to seek dismissal of Plaintiff's second alleged act of retaliation, Defendants completely ignore Plaintiff's allegations concerning Defendants' conduct following the good faith filing of this action. Courts have routinely held that retaliation claims made by former employees are permissible for post-employment conduct in certain situations. *See Porter v. MooreGroup Corp.*, 2020 WL 32434, at *11 (E.D.N.Y. Jan. 2, 2020) (collecting cases). Importantly, courts have specifically recognized post-employment retaliation claims where previous employer's conduct included "lawsuits designed to deter claimants from seeking legal redress." *Porter*, 2020 WL 32434, at *11 (citing *Torres v. Gristedes Operating Corp.*, 628 F. Supp. 2d 447, 472-73 (S.D.N.Y. 2008)). Crucially, as cited *supra*, the FLSA specifically prohibits a

16

"person" from engaging in retaliation under the statute, not just an employer. *See* 29 U.S.C. § 215(a)(3) and 29 U.S.C. § 203(a).

Here, in addition to her complaints of Defendants' failure to pay her wages, Plaintiff adequately pleads that she engaged in protected activity by filing the instant action asserting retaliation claims under the FLSA and NYLL. *See* Am. Comp., ¶ 31. Plaintiff alleges in her Amended Complaint that Defendants served her with a summons from Rabbinical Court *without her consent* following her filing of the instant action. *See* Am. Comp., ¶ 35. The summons warned her of serious consequences for proceeding in secular court as she was "forbidden" to do so. *See* Am. Comp., ¶ 37. Plaintiff understood this to be a threat of a "siruv," which is a form of contempt of court order that would serve a black mark on Plaintiff in her community. *See* Am. Comp., ¶ 38.

For the foregoing reasons, Plaintiff alleges two separate acts that, accepted as true, each independently allege FLSA-prohibited conduct that Defendants committed.

2.    *Plaintiff's multiple complaints constitute protected activity to put a reasonable employer on notice of conduct in violation of the FLSA*

(a) First alleged act of retaliation

It is well-established law in the Second Circuit that participation in protected activity "includes lodging an internal complaint with an employer." *Greathouse*, 784 F.3d at 114. Indeed, "[c]onsistent with FLSA's text and remedial purpose, with the approach adopted in *Kasten*, and with Congressional design to encourage workers to report potential violations without fear of reprisal, [the Court] construe[s] the phrase 'file any complaint' as encompassing oral complaints made to employers in a context that makes the assertion of rights plain." *Id*. at 115. While a complaint must be more than "a grumble in the hallway about an employer's payroll practice," an employer is on notice "when it need take care to avoid action that might be seen as retaliatory: 'where the recipient has been given a fair notice that a grievance has been lodged and does, or

17

should, reasonably understand the matter as part of its business concerns.'" *Id*. at 116 (quoting *Kasten*, 131 S. Ct. at 1334); *see Dunn v. Sederakis*, 143 F. Supp. 3d 102, 113 (S.D.N.Y. 2015) (explaining that a complaint is not protected when it is merely "abstract grumblings").

Critically, the Second Circuit emphasized that "[t]he employee need not invoke the Act by name," but rather must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id*. (quoting *Kasten*, 131 S. Ct. at 1334). Indeed, courts have routinely held that "specific mention of the FLSA is not necessary to make a complaint." *Baguidy*, 283 F. Supp. 3d at 31 (collecting cases); *see Dunn*, 143 F. Supp. 3d at 113 (emphasizing that the court was "unprepared to hold that an explicit claim of illegality, as opposed to a clear articulation of facts indicative of illegality, is required for an oral complaint to support a claim of FLSA retaliation").

Importantly, in *Reilly v. Quickcare Medical, P.C.*, the court held that a complaint filed under the New Jersey Division of Labor and Workforce Development that mentioned only state law wage claims nonetheless qualified as a protected complaint under 215(a)(3) because the statutory language expressly covered "*any* complaint" or "*any* proceeding under or *related* to this chapter." 2014 WL 2571642, at *2 (D.N.J. June 9, 2014) (emphasis in original).

Here, Plaintiff provides detailed allegations of multiple complaints about non-payment on April 3, May 22, and June 8, 2021. *See* Am. Comp., ¶¶ 12, 23, 26. Even assuming *arguendo* that Plaintiff's first "inquiry" on April 3, 2021, does not amount to a complaint that would reasonably put an employer on notice of a violation of the law, her two successive complaints, at the very least, sufficiently constitute a protected complaint when drawing all inferences in the Plaintiff's favor, as the Court must do at this stage. *Rosenman Family, LLC*, 395 Fed. Appx. at 768. Indeed,

Plaintiff explicitly alleges that her second complaint on May 22, 2020, consisted of voicemails left by Plaintiff complaining that Defendants "once again failed to pay her the wages lawfully owed to her." *See* Am. Comp., ¶ 23. As this Court has held, because the Court must only assess the legal feasibility of the complaint on a motion to dismiss (*see Thompson*, 246 F. Supp. 3d at 700), Plaintiff's "good faith, reasonable belief that the underlying challenged actions of the employer violated the law" is all that is necessary. *Cabrera*, 2018 WL 1225260, at *6.

Plaintiff alleges that after her May 22 complaint, Defendants' bookkeeper informed Plaintiff that "Beth Jacob would deliver Plaintiff's outstanding wages immediately." *See* Am. Comp., ¶ 25. Plaintiff then alleges a third "good faith complaint about the nonpayment of her wages" on June 8, 2020, this time directly to Defendant Levi. *See* Am. Comp., ¶ 26. Again, clearly showing that Defendants reasonably understood that Plaintiff was complaining about unlawful conduct *related* to wage violations, Plaintiff alleges that during this call, Defendant Levi berated Plaintiff about her insistent complaining about her unpaid wages. *See* Am. Comp., ¶ 27. Indeed, Plaintiff alleges that Defendant Levi emphasized that when Plaintiff called him initially about the unpaid wages on April 5, 2020, he considered it to be equivalent to Plaintiff telling him to "drop dead," and that her actions resulted in her "unemploy[ing] herself." *See* Am. Comp., ¶ 27. Defendant Levi also told Plaintiff that as of that date, her fifteen-year employment with Beth Jacob was ended as a result of her complaining. *See* Am. Comp., ¶ 27. *Greathouse*, 784 F.3d at 113. As the Second Circuit recognized, "Congress enacted section 215(a)(3) to prevent fear of economic retaliation from inducing workers quietly to accept substandard conditions, and to foster an atmosphere protective of employees who lodge such complaints." *Greathouse*, 784 F.3d at 113 (internal quotations omitted). Thus, because the FLSA specifically requires employers to promptly pay their employees as explained above, Plaintiff's good faith complaints about her need to receive

her wages to pay her rent are exactly the substandard conditions that the law is designed to avoid by making termination based on such complaints unlawful.

Faced with similar arguments in deciding a motion to dismiss plaintiffs' FLSA retaliation claims, Judge McMahon cogently explained:

> Defendants appear to conflate the evidentiary standard established in *Greathouse* and *Kasten* – that a complaining employee must couch his or her complaint in sufficiently clear and detailed terms – with the pleading standard relevant on a motion to dismiss. To survive such a motion, Plaintiffs need only plead facts sufficient to give Defendants fair notice of the grounds upon which their claims rest and to make their claims plausible. *See Matson v. Bd. of Educ. Of City Sch. Dist. of N.Y.*, 631 F.3d 57, 72 (2d Cir. 2011). They need not allege sufficient facts to prove the claim at trial. *Id.*; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83-84 (2d Cir. 2015). Thus, Plaintiffs need not allege with such specificity the who, what, when, and where that Defendants suggest is required. The time for this is later on a motion for summary judgment – which was the procedural posture of the case in *Kasten*.

*Cabrera*, 2018 WL 1225260, at *5. Based on the foregoing, Plaintiff pleads sufficient facts to give Defendants fair notice of the grounds upon which her claims rest.

Defendants feebly contend that the "there is no way BYDM could have understood and/or been on notice that Plaintiff was asserting any rights under the FLSA while requesting money for a period of time that the school was closed and she was not working." *See* Defendants' Motion, p. 13. This argument fails for two reasons. First, Defendants urge the Court to "assay the weight of the evidence which might be offered in support therefore" as to Defendants' knowledge, something this Court has held that it is prohibited from doing at this stage. *Thompson*, 246 F. Supp. 3d at 700. Second, not only is discovery necessary to determine whether Beth Jacob paid all of its other salaried employees during the period the school was closed, but Plaintiff in fact alleges that Defendants actually partially paid her for these work periods after she complained. *See* Am. Comp., ¶¶ 17, 22. This is because when an employer pays an employee on a salary basis, the

20

employer must pay that employee "a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602. While the regulation also provides that "[e]xempt employees need not be paid for any workweek in which they perform no work" (29 C.F.R. § 541.602(a)(1)), as previously explained, Plaintiff has pleaded that she is a non-exempt employee and therefore Defendants must pay her weekly salary if she is "ready, willing and able to work, deductions may not be made for time when work is not available." 29 C.F.R. § 541.602(a)(2).

Thus, taking Plaintiff's allegations as true and drawing all inferences in her favor, Plaintiff sufficiently alleged that she complained about unlawful conduct under the FLSA. Plaintiff indisputably plead her claims "in sufficiently clear and detailed terms" to "make her claims plausible" (*see Cabrera*, 2018 WL 1225260, at *5), and any argument as to what Defendants "understood" is an argument inappropriate for the request they seek herein.

(b)     Second alleged act of retaliation

It is equally well settled that the plain language of section 215(a)(3) prohibits "retaliation for filing formal complaints, instituting a proceeding, or testifying." *Greathouse*, 784 F.3d at 111-12 (citation omitted). In the present case, Plaintiff alleged in her Amended Complaint that following the filing of her initial complaint asserting retaliation claims under the FLSA and NYLL on September 24, 2020, Defendants engaged in multiple efforts to dissuade her from continuing her action. *See* Am. Comp., ¶¶ 31-38. One of these efforts included instituting an action in Rabbinical Court that warned her that according to her religion, she was forbidden from filing in secular court. *See* Am. Comp., ¶ 37. As Plaintiff alleges, Defendants' conduct was especially egregious because the first "beth din" that Defendants tried to involve stated by email "[i]f both

21

parties agree to resolve the dispute at our beis din, we can coordinate an appointment." *See* Am. Comp., ¶ 33. In response, on October 22, 2020, Plaintiff, through counsel, sent correspondence to Rabbi Scherman to notify him that Plaintiff declined to consent to appear for a beth din and that her decision was final. *See* Am. Comp., ¶ 34.

Egregiously, "on or around November 12, 2020, *despite being on notice of Plaintiff's refusal to appear for a beth din*, Defendant Levi on behalf of Beth Jacob, instituted an action in Rabbinical Court of Kolel Tartikov ("Beth Din"), located at 1452-55 Street, Brooklyn, New York *without her consent*." *See* Am. Comp., ¶ 35. Plaintiff provides allegations concerning the details of the warning from the summons in her Amended Complaint. *See* Am. Comp., ¶ 37. Plaintiff further alleges that she perceived Defendants' threat of a "siruv," which is a form of contempt of court order issued by a "beth din," was intended to intimidate her as it would result in serious economic, religious, and personal implications in her community. *See* Am. Comp., ¶ 38.

Again, nowhere in Defendants' Motion does it even address this second allegation of retaliation. Clearly, finding absolutely no support for dismissal of Plaintiff's claims of post-employment retaliation claims, Defendants are implicitly asking the Court to simply ignore these allegations. The Court should wholly reject Defendants' request.

Defendants argue that this case is similar to *Bergman v. Kids by the Bunch Too, Ltd.*, 2016 WL 4991549 (E.D.N.Y. May 10, 2016). *Bergman,* however, dealt solely with a claim of retaliation based on the plaintiff's complaint about "unpaid, accrued vacation days." *Id*. at 7. The court recommended that default judgment on this claim be denied, as the court correctly determined that "[p]ayment for accrued vacation time is not protected under the FLSA," and therefore the plaintiff "is not alleging retaliation for participation in a protected activity under the FLSA." *Id*. at 8. The present case is easily distinguishable as here, Plaintiff alleges two separate instances of retaliation

that inarguably involve claims under FLSA. One involving Defendants' alleged violation of the FLSA's prompt payment requirement and the other involving Defendant's post-employment retaliation of threatening her reputation for proceeding in a secular court against her former employer. Not only do Defendants fail to find any support for their argument with respect to Plaintiff's allegations of the FLSA's prompt payment requirement, but it fails to even mention Plaintiff's allegations of post-employment retaliation following her filing of this action.

### B.     Employment Action Disadvantaging Plaintiff Causally Related to Complaint

As this Court has recently confirmed, termination of employment inarguably constitutes an adverse employment action. *See Connolly v. City of New York*, 2020 WL 5553843, at *12 (E.D.N.Y. Aug. 18, 2020) (Kuntz, *J.*). Significantly, this Court additionally recognized that an "adverse employment action is more relaxed for claims of retaliation than for claims of employment discrimination." *Id.* (citation and internal quotations omitted). Concerning causality, the Second Circuit has held that "a plaintiff can indirectly establish a causal connection to support a retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (citation omitted).

With respect to Plaintiff's first claim of retaliation, Plaintiff sufficiently alleges that Defendants terminated her immediately after making her third complaint directly to Defendant Levi during their June 8th phone call. *See* Am. Comp., ¶ 26-27. Therefore, the second and third prong are both easily met – and Defendants do not argue otherwise.

With respect to Plaintiff's second retaliation claim, as discussed above, Plaintiff's post-employment allegations additionally qualify as adverse actions as Defendants' conduct included "lawsuits designed to deter claimants from seeking legal redress." *Porter*, 2020 WL 32434, at *11

23

(citation omitted). Defendants served her with a summons from Rabbinical Court that Plaintiff alleges was meant to deter her from proceeding with her lawsuit in "secular" court. *See* Am. Comp., ¶ 35-38. The second and third prongs are met on Plaintiff's second claims of retaliation and here too, Defendants utterly fail to argue otherwise.

Based on the foregoing, the Court should deny Defendants' Motion to dismiss Plaintiff's FLSA retaliation claims, as Defendants have wholly failed to meet the Fed. R. Civ. P. 12(b)(6) standard warranting such relief.

## III.   PLAINTIFF ESTABLISHES A RETALIATION CLAIM UNDER THE NYLL

Under NYLL § 215(1)(a)(i), an employer is prohibited from "discharging, threatening, penalizing, or in any other manner discriminating or retaliating against any employee because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter."

Critically, although the FLSA has been interpreted to include a prompt payment requirement, the NYLL "specifically addresses timing of payment of wages: employers must make payments timely, and clerical workers and other works must be paid 'in accordance with the agreed terms of employment . . .'" *Belizaire*, 61 F. Supp. 3d at 353 (quoting NYLL § 191(d)). Moreover, "[t]he NYLL's anti-retaliation provision is somewhat broader in scope than the FLSA's," as "[u]nder the NYLL, a an employer may not retaliate against any employee, including by discharging the employee, because "such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, ... that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter."" *Id.* (citing NYLL § 215(1)(a)(i)). "A plaintiff must plead that while employed by the

defendant, [the plaintiff] made a complaint about the employer's violation of the law and, as a result, was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action." *Id.* (citation and internal quotations omitted).

Here, for the same reasons that Plaintiff's allegations sufficiently allege an FLSA retaliation claim, the allegations meet the lower bar set for the NYLL. Indeed, Plaintiff alleges that she complained about an explicit NYLL violation, the failure to timely pay wages on multiple occasions. *See* Am. Comp., ¶¶ 12, 23, 26. Plaintiff additionally alleges that not only was she terminated for her complaint, but that the employer, Defendant Levi, specifically told her that because of her complaint, she "unemployed herself." *See* Am. Comp., ¶ 27. There is also no argument that Plaintiff sufficiently pleads that Defendants employed her for fifteen years as a full-time secretary on a salary-basis until her termination on June 8, 2020. *See* Am. Comp., ¶¶ 6, 10-12.

With respect to Plaintiff's NYLL 195(3) claims concerning wage statements, Plaintiff sufficiently alleges that throughout her employment during the relevant period of this action, on each occasion when Defendants paid Plaintiff, Defendants failed to furnish Plaintiff with a wage statement that accurately stated Plaintiff's actual number of hours worked in a week, Plaintiff's regular rate of pay, Plaintiff's overtime rate of pay, and the basis for computing Plaintiff's straight or overtime rates of pay. *See* Am. Comp., ¶ 30. Again, Defendants argue that this claim must be dismissed because Defendants did not owe Plaintiff any wages. Because when taken as true, these allegations state a NYLL 195(3) claim under the NYLL, however, Defendants' argument must fail here too.

For the foregoing reasons, the Court should deny Defendants' Motion on concerning Plaintiff's NYLL as well.

25

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants'

Motion to Dismiss Plaintiff's Complaint in its entirety, and for such other and further relief as the

Court deems appropriate.

Dated: New York, New York
          February 17, 2021

Respectfully submitted,

STEVENSON MARINO LLP
*Attorneys for Plaintiff*
75 Maiden Lane, Suite 402
New York, New York 10038
(212) 939-7229

_____
JEFFREY R. MAGUIRE, ESQ.

26