December 13, 2023

<u>Via ECF</u>
The Honorable Joseph A. Marutollo
United States Magistrate Judge for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Rosenbaum v. Bais Yaakov Drav Meir et al.*
      <u>Docket No: 20-cv-4520 (WFK)(JAM)</u>

Dear Judge Marutollo:

Counsel for the Plaintiff, Lisa Rosenbaum ("Plaintiff"), and counsel for Defendants Bais Yaakov Drav Meir ("Beth Jacob") and Micheal Levi (collectively as the "Defendants"), in the above-referenced action claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), submit this joint letter pursuant to the Court's Individual Practices and Rules, Rule V(B). On December 7, 2023, the parties conducted a meet and confer on a discovery issue by telephone and made a good faith effort to resolve the dispute under Fed. R. Civ. P. 37(a)(1) and Local Civil Rule 37.3(a), but were ultimately unsuccessful in their efforts to resolve. Due to their failure to resolve the discovery dispute, the parties respectfully seek the Court's intervention and state their respective positions as follows:

<u>Plaintiff's Position:</u>

    A.  <u>Factual Background:</u>

On April 17, 2023, Plaintiff served Requests for Production of Documents on Defendants. On June 6, 2023, Defendants served their responses to Plaintiff's requests. *See* **Exhibit 1**, Defendants' Objections and Responses to Plaintiff's First Request for the Production of Documents. As part of Defendants' production, Defendants provided a notice from the Department of Labor Unemployment Insurance Division ("DOL"). *See* **Exhibit 2**, DEFENDANTS001.

Also on June 6, 2023, Defendants served Defendants' Objections and Answers to Plaintiff's First Set of Interrogatories ("Answers to Interrogatories"). In Interrogatory Number 13, Plaintiff asked Defendants to "State whether Defendants contend that they terminated Plaintiff's employment, and if so, state their basis for termination." *See* **Exhibit 3**, Answers to Interrogatories, Interrogatory No. 13. Defendants' Answer was as follows:

> Defendants learned through the Department of Labor
> Unemployment that Plaintiff filed for unemployment benefits and

1

> in doing so represented to the Department of Labor that her employment ended.

See **Exhibit 3**, Answers to Interrogatories, Interrogatory No. 13. This Answer to Interrogatory No. 13 supports Defendants' Fifth Affirmative Defense, which states that "Plaintiff [sic] did not terminate the Plaintiff, but the Plaintiff terminated herself from employment by filing for unemployment with the Department of Labor while still being paid by the Defendants BAIS YAAKOV DRAV MEIR. See Defendants' Answer to the Amended Complaint, Dkt. No. 27, p. 9, ¶ 5. There is no dispute, however, that Defendants continued to pay her wages for two more months ending June 26, 2020, with the exception of two paychecks that it withheld from Plaintiff. See **Exhibit 4**, Plaintiff's payroll.

On December 5, 2023, approximately one week prior to the parties' discovery deadline, Defendants provided their Third Supplemental Response to Plaintiff's First Request for the Production of Documents, which included a different version of Exhibit 2. This document was the same DOL notice, but modified with the inclusion of writing from Defendants addressed to the DOL. See **Exhibit 5**, DEFENDANTS000133. The writing states as follows:

> THE EMPLOYEE HAS BEEN PAID THROUGHOUT. THERE WAS A SHORT DELAY IN HER RECEIVING HER CHECK DUE TO THE CORONA PANDEMIC WHICH IS PROBABLY WHY SHE APPLIED FOR UNEMPLOYMENT. SHE WAS AND IS EMPLOYED FULL TIME. THANK YOU FOR CLEARING THIS ISSUE.

Now in possession of this crucial evidence that conclusively demonstrates that Defendants made a vigorous effort to keep Plaintiff on payroll, Plaintiff researched Defendants' status with the Paycheck Protection Program ("PPP") to ascertain whether Defendants received a PPP loan around the time of Plaintiff's termination. Based on public information, Plaintiff learned that Beth Jacob did in face receive a PPP loan of $625,292 with the representation that the money would be used *exclusively* for payroll. See **Exhibit 6**.[1]

On December 7, 2023, parties held a meet and confer. Defendants represented that their failure to provide the document attached as Exhibit 5 at an earlier date was based on their initial belief that the document was subject to attorney/client privilege. Defendants ultimately concluded it was not, confirming that the correspondence was written by Rabbi Gewirtz to the DOL. Defendants never provided a privilege log stating that they were withholding the document pursuant to Fed. R. Civ. P. 26(b)(5), however. Plaintiff's counsel explained that this document raises the issue of whether Defendants "cleared up" Plaintiff's unemployment application and represented that she was still employed full time in order to satisfy its PPP loan obligations, which would inarguably be relevant to the wages that Plaintiff complained about not receiving in this lawsuit. Despite a good faith effort to resolve, Defendants' counsel, Mr. Kirschenbaum, stated that Defendants would not turn over the additional requested document

---

[1] Public information shows that Defendants represented that 151 jobs were retained, which the PPP application would confirm if Plaintiff was included.

and would oppose any motion compelling Defendants to do so.

### B. Legal Argument:

The Federal Rules of Civil Procedure permit parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) (citing Fed. R. Civ. P. 26(b)(1)). Moreover, "a party must be afforded a meaningful opportunity to establish the facts necessary to support [his or her] claim." *Id.* Importantly, "[i]f the evidence sought is relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause by demonstrating a particular need for protection." *Id.* (internal quotations and citations omitted).

Here, Plaintiff asserts a claim that Defendants violated the prompt payment requirements of the FLSA and NYLL. In their Answer, Defendants asserted as their Third Affirmative Defense that the action is "barred to the extent Plaintiff seeks recovery for time that is not compensable time, i.e. "hours worked" under the FLSA. Indeed, Defendants moved to dismiss Plaintiff's complaint on this same issue, as noted by Judge Kuntz in the Court's Order denying Defendants' motion.[2] Defendants also provided in their Answers to Interrogatories, that "Defendants continued to pay Plaintiff despite her not performing any work until the end of June 2020." *See* **Exhibit 3**, Answers to Interrogatories, Interrogatory No. 10. Additionally, Defendants stated in their Answers to Interrogatories that they objected to answering on the basis that "Plaintiff had no unpaid wages." *See* **Exhibit 3**, Answers to Interrogatories, Interrogatory No. 12.

In light of Defendants' Third Affirmative Defense and stated defenses in their Answers to Interrogatories, Defendants representation to the DOL that Plaintiff "was and is" in fact a full-time employee that "has been paid throughout," unquestionably makes the PPP loan application relevant in this action. Specifically, it is prejudicial to Plaintiff's case that Defendants assert a defense that Plaintiff was not entitled to wages, when discovery is in Defendants' possession that would support that Defendants were obligated to pay according to the PPP loan. This is because Defendants were required to list Plaintiff as an employee with her salary in the loan application. Moreover, the fact that Defendants terminated Plaintiff on June 8, 2020, but then continued to pay her until June 26, 2023, correlates with the 8-week PPP loan requirement (April 30, 2020 – June 26, 2020.) *See* **Exhibit 6**, Plaintiff's payroll. Defendants should not benefit from withholding the DOL document until the end of discovery, which now would make any FOIA request untimely in light of the parties' January 15, 2024, discovery deadline.

---

[2] As the Court explained in its Order, "[i]nstead, the Defense argues Plaintiff failed to plead sufficient facts evincing she performed work for which the FLSA required Defendants to compensate. In other words, the Defense argues once the school closed on March 18, 2020, Plaintiff only worked one day (April 26, 2020), and Defendants compensated Plaintiff for her work on this day. Def.'s Memo., ECF No. 23 at 19. Therefore, because the school was closed for the rest of the relevant time period, Plaintiff did not perform any work during the relevant period and thus any payment she received after the school's closure was 'not wages and not the subject of the FLSA's minimum wage laws and/or the NYLL timely payment of wages statutes.' *Id.* at 12." *See* Order, Dkt. No. 24, p. 6, ¶ 3.

Plaintiff also asserts a claim for retaliation under the FLSA and the NYLL. The FLSA makes it unlawful "for any person to discharge [an] employee because such employee has filed any complaint . . . related to this chapter." 29 U.S.C. § 215(a)(3). To state a claim for retaliation under the FLSA, a plaintiff must allege "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010).

As previously explained, Defendants defense that Plaintiff "terminated herself" by filing for unemployment is unequivocally belied by Defendants' belated production of Defendants' correspondence to the DOL. Thus, Plaintiff should be entitled to seek discovery that serves to demonstrate the causal connection between her engagement in protected activity and her termination. Indeed, the record is clear that not only did Defendants *prevent* Plaintiff from filing for unemployment, but continued to pay her *weeks* after terminating her, an argument that would be substantially supported by the PPP loan application containing Plaintiff's salary information.[3]

Defendants posit that Plaintiff is engaging in "bad faith" conduct, pointing to the "timing of Plaintiff's request." This utterly ignores that Defendants blatantly violated Fed. R. Civ. P. 26(b)(5) by failing to produce a privilege log only to provide the belated discovery a week before the end of discovery. Plaintiff would have been able to bring this issue to the Court months ago should Defendants have *either* provided a privilege log *or* turned over this crucial document. Plaintiff would also have had the opportunity to make a FOIA request, as this "highly sensitive" information is public record. As the PPP loan application is undoubtedly relevant to Defendants' defense that it need not pay Plaintiff any wages for the period in question, Plaintiff respectfully requests that the Court order the Defendants to produce the requested document.

- *Defendants' position:*

Plaintiff's request should be denied. Plaintiff has no basis for seeking Defendants' PPP loan application. In addition to failing to articulate *how* any information in the PPP application would support a claim that Plaintiff was terminated for complaining about late-paid wages, Defendants have failed to articulate: what information regarding Plaintiff's salary is contained in the PPP application that they do not already have? Plaintiff is already aware what she received in pay both before and after Defendants filed the PPP application.

This is Plaintiff's second attempt—after losing a motion before Judge Reyes on September 6, 2023 seeking all payroll data for all of Defendants' employees during the Covid-19 period—to harass Defendants by seeking sensitive information having absolutely nothing to do with her claim.

There is no dispute that due to the Covid-19 shutdown, after March 18, 2020, Plaintiff

---

[3] Plaintiff does not seek the information of **any other employee** and takes no issue with information of other employees, or confidential information concerning Beth Jacob from being redacted.

performed work for Defendants on a single day, April 26, 2020. There is also no dispute that although Plaintiff was not working for Defendants until the end of June 2020, they continued to consider her an employee and made the same payments to her and on her behalf that they paid for her work prior to the Covid-19 shutdown. Plaintiff's claim is that she complained about these payments being paid late or incomplete and was terminated in retaliation for these complaints. Defendants' position is, *inter alia,* that payments in question were plainly not wages under the FLSA and NYLL and therefore Plaintiff's complaints were not protected by either statute. It is axiomatic that both the FLSA and NYLL require employers to pay wages to employees only for their compensable work time. "To establish liability under the FLSA [and NYLL] on a claim for unpaid [wages], a plaintiff must prove that he performed work for which he was not properly compensated[.]" *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011); N.Y. Lab. L. § 652(1) (requiring employers to pay a minimum wage "for each hour worked"). Accordingly, any payments Defendants made to or on behalf of Plaintiff for time periods when she was not performing any works are not "wages" under the FLSA and NYLL.

In any event, Plaintiff has not identified any information in the PPP loan application to which they are entitled or that would bolster her position that her complaints were protected under the FLSA and/or NYLL. Plaintiff's assertion that "Defendants were required to list Plaintiff as an employee with her salary in the loan application," even if true, is insignificant. The amount of a PPP loan was based on *past* payroll expenses and therefore had nothing to do with payments made to employees after the loan application was made. *See* https://www.sba.gov/sites/default/files/2020-12/How-to-Calculate-Loan-Amounts-508_6-26-20.pdf. Moreover, payments made to furloughed – *i.e.*, non-working – employees are considered "payroll costs" for the purposes of PPP loans. 85 Fed. Reg. 33004, 33006 (June 1, 2020). As PPP "payroll costs" are not identical to FLSA and NYLL "wages," the PPP loan application is simply not relevant to this action. Moreover, the PPP loan applications contains sensitive information about Defendants' finances, which is not relevant. (Dkt. at Sept. 6, 2023.) Finally, Plaintiff is extremely vague about what content in the PPP loan application could help her or how such content could help her, and she does not and cannot explain how whatever "salary information" she seeks is not already in her possession.

Put simply, that Defendants mentioned Plaintiff's past salary on the PPP application is of no moment in the case. The underlying fact that Defendants filed a PPP application is already known to Plaintiff and is also of no moment in this case. Finally, whether Defendants used PPP loan proceeds to pay Plaintiff whatever they paid her during the Covid-19 period (a) would not be reflected on the PPP loan application, and (b) in any event is of no moment in this case.

Defendants respectfully note that until this dispute was raised, the discovery deadline was December 15, 2023. Plaintiff had originally scheduled 3 depositions for December 12, 13, and 14, and first raised the issue of Defendants' PPP application in a phone call on December 7, 2023. We did not oppose Plaintiff's request for an extension pending the outcome of this dispute. However, given the timing of Plaintiff's request and the fact that it is their second half-baked request for highly sensitive data, we are concerned that Plaintiff engaged in this vexatious motion practice in bad-faith for the purpose of gaining additional time to take her depositions. Accordingly, Plaintiff's motion to compel should be denied.

We thank the Court for its time and attention to this matter.

Dated: December 13, 2023
New York, New York

Respectfully submitted,

| STEVENSON MARINO LLP | JOSEPH & KIRSCHENBAUM LLP |
|---|---|
| By: _____<br>    Jeffrey R. Maguire<br><br>*Attorneys for Plaintiff* | By: */s/ D. Maimon Kirschenbaum*<br>    D. Maimon Kirschenbaum<br><br>*Attorney for Defendants* |