UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LISA ROSENBAUM,

                      Plaintiff,

          -against-

BAIS YAAKOV DRAV MEIR, and MICHAEL LEVI,
individually,

                 Defendants.

Civil Action No.:
20-CV-4520 (WFK) (JAM)


**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**



**STEVENSON MARINO LLP**

Jeffrey R. Maguire
J.R. Stevenson
Justin Marino
445 Hamilton Avenue, Suite 1500
White Plains, New York 10601
(212) 939-7229
(212) 531-6129
*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ...................................................................................................... ii

**PRELIMINARY STATEMENT** ................................................................................................ 1

**ARGUMENT** ............................................................................................................................. 2

**I.**     **THE COURT SHOULD NOT DEPART FROM ITS EARLIER DECISION BASED ON THE LAW OF THE CASE DOCTRINE** ................................................... 2

**II.**    **THE RECORD ESTABLISHES DEFENDANTS FAILED TO PROMPTLY PAY PLAINTIFF'S WAGES** .................................................................................................. 3

**III.**   **DEFENDANTS FAIL TO PROVIDE ANY SUPPORT FOR THEIR ARGUMENT THAT THE WAGES PAID TO PLAINTIFF ARE NOT "WAGES" UNDER THE FLSA/NYLL** ............................................................................................................... 7

**IV.**   **PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER NYLL UNTIMELY PAYMENT CLAIMS** ............................................................................. 11

**V.**    **PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER WAGE STATEMENT CLAIMS** ............................................................................................. 12

**CONCLUSION** ......................................................................................................................... 12

**Cases**

*BaRoss on behalf of BaRoss v. Greenlawn Volunteer Fire Dep't, Inc.*,
2021 WL 930254 (E.D.N.Y. Mar. 10, 2021) ............................................................ 3

*Brooklyn Savings Bank v. O'Neil*,
324 U.S. 697 (1945) .................................................................................................. 7

*Bueno v. Buzinover*,
2023 WL 2387113 (S.D.N.Y. Mar. 7, 2023) .......................................................... 12

*Campbell v. Empire Merchants, LLC*,
2018 WL 5456666 (E.D.N.Y. Aug. 27, 2018) ....................................................... 11

*Cooke v. Frank Brunckhorst Co., LLC*,
__ F. Supp. 3d __, 2024 WL 2263087 (E.D.N.Y. May 18, 2024) ......................... 12

*Hosking v. New World Mortg., Inc.*,
570 F. App'x 28 (2d Cir. 2014) ............................................................................... 6

*Johnson v. Holder*,
564 F.3d 95 (2d Cir. 2009) ....................................................................................... 2

*Karupaiyan .v CVS Health Corp.*, ,
2021 WL 4341132 (S.D.N.Y. Sept. 23, 2021) ....................................................... 11

*Klaper v. Cypress Hills Cemetery*,
2014 WL 1343449 (E.D.N.Y. Mar. 31, 2014) ......................................................... 2

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010) ................................................................................... 11

*Palmer v. Amazon.com, Inc.*,
51 F.4th 491 (2d Cir. 2022) .................................................................................... 11

*Rigopoulos v. Kervan*,
140 F.2d 506 (2d Cir. 1943) ..................................................................................... 3

*Rogers v. City of Troy, N.Y.*,
148 F.3d 52, 58 (2d Cir. 1998) ........................................................................ 2, 3, 4

*Rosenbaum v. Meir*, 658 F. Supp. 3d 140 (E.D.N.Y. 2023) ................................... *passim*

*Shuler v. Liberty Consulting Servs., Ltd.*,
2022 WL 1552039 (E.D.N.Y. Apr. 4, 2022) ........................................................... 7

*United States v. Quintieri,*
   306 F.3d 1217 (2d Cir. 2002) ................................................................ 2

*Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.,*
   956 F.2d 1245 (2d Cir.1992) ................................................................ 2

*Vornado Realty Tr. v. Castlton Env't Contractors, LLC,*
   2013 WL 5719000 (E.D.N.Y. Oct. 18, 2013) ....................................... 2

**Statutes**

26 U.S.C.A. § 3402 .................................................................................... 10

29 C.F.R. § 778.218 .................................................................................... 8

29 U.S.C. § 203(m) .................................................................................... 7, 9

29 U.S.C. § 207(a)(1) ................................................................................ 7

29 U.S.C. § 207(e) ...................................................................................... 7, 8

Internal Revenue Code § 3402 .................................................................. 10

NYLL § 191 ................................................................................................ 11

## PRELIMINARY STATEMENT

Plaintiff Lisa Rosenbaum brought this action alleging failure to promptly pay wages and retaliation claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against her former employers, Bais Yaakov Drav Meir (the "School"), and Michael Levi (collectively as "Defendants"). On May 1, 2024, Plaintiff moved for an Order granting partial summary judgment on five following issues. On June 3, 2024, Defendants opposed Plaintiff's motion (hereinafter, "Defendants' Opposition").

In Defendants' Opposition, they do not dispute that they failed to timely pay Plaintiff on her scheduled pay dates. Instead, Defendants dispute that these payments are somehow not wages at all, and therefore not subject to the FLSA/NYLL's prompt pay requirements. But glaringly, Defendants take no position on what these payments are or how they fall outside of the FLSA's broad definition of wages under 29 U.S.C. § 203(m). Instead, they urge the Court to look to the definition of "regular rate" under the FLSA's overtime provision in 29 U.S.C. 207(a). Fatal to Defendants' argument, however, is that this case has nothing to do with overtime or calculating one and one-half times the regular rate under that provision.

Surprisingly, even though Defendants made the exact same argument that Plaintiff did not work compensable time and therefore is not entitled to any wages regardless of the fact that they did pay her and all other employees' wages, Defendants completely fail to address the Court's decision on these issues in *Rosenbaum v. Meir*, 658 F. Supp. 3d 140 (E.D.N.Y. 2023). Specifically, in its decision, the Court explained the objective standards articulated by the Second Circuit concerning the FLSA's prompt payment requirement. *See id.* (citing *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 58 (2d Cir. 1998)). Defendants failed to address any of these factors.

Based on the foregoing and for the reasons stated below, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Partial Summary Judgment in its entirety.

**ARGUMENT**

**I.    THE COURT SHOULD NOT DEPART FROM ITS EARLIER DECISION BASED
ON THE LAW OF THE CASE DOCTRINE**

The law of the case doctrine "holds that when a court has ruled on an issue, that decision

should generally be adhered to by that court in subsequent stages in the same case, unless cogent

and compelling reasons militate otherwise." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d

Cir. 2002). While the application of the law of the case doctrine is indeed "discretionary," the

Second Circuit has cautioned that departure from it should be for "cogent or compelling reasons

including an intervening change of controlling law, the availability of new evidence, or the need

to correct a clear error or prevent manifest injustice." *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d

Cir. 2009) (internal quotations and citations omitted).

This Court has explained that "[t]he objective of the law of the case doctrine includes

promoting efficiency and avoiding endless litigation by allowing each stage of the litigation to

build on the last and not afford an opportunity to reargue every previous ruling." *Vornado Realty

Tr. v. Castlton Env't Contractors, LLC*, 2013 WL 5719000, at *2 (E.D.N.Y. Oct. 18, 2013) (Kuntz,

*J.*) (citation omitted). As this Court has recognized, "[d]istrict courts in the Second Circuit strictly

adhere to this approach." *Vornado Realty Tr.*, 2013 WL 5719000, at *2 (collecting cases).

Importantly, courts in this district have routinely held that "the court may apply the law of

the case doctrine to a legal determination made at the motion to dismiss stage." *Klaper v. Cypress

Hills Cemetery*, 2014 WL 1343449, at *4 (E.D.N.Y. Mar. 31, 2014) (cleaned up) (collecting

cases); *BaRoss on behalf of BaRoss v. Greenlawn Volunteer Fire Dep't, Inc.*, 2021 WL 930254, at

*6 (E.D.N.Y. Mar. 10, 2021) (applying law of case doctrine at summary judgment stage based on

same legal conclusions made at motion to dismiss stage) (citation omitted).

2

In Defendants' Opposition, they run the same playbook as they ran in their cross-motion for summary judgment of Plaintiff's FLSA/NYLL prompt payment claims: disregard the Court's earlier decision on these same legal issues. Defendants' Opposition fails to address, much less provide any cogent or compelling reasons that the Court should depart from its legal conclusions on these exact same issues. Instead, Defendants reargue the same thing in their motion to dismiss.

Defendants' attempt to relitigate the Court's legal conclusion on the same issue is because discovery established each and every allegation regarding Plaintiff's FLSA/NYLL prompt payment claims, warranting summary judgment on these claims.

## II.   THE RECORD ESTABLISHES DEFENDANTS FAILED TO PROMPTLY PAY PLAINTIFF'S WAGES

This Court previously held that "late wages are considered a form of unpaid wages." *Rosenbaum*, 658 F. Supp. 3d at 147 (citing *Rigopoulos v. Kervan,* 140 F.2d 506, 507 (2d Cir. 1943); *Rogers,* 148 F.3d at 58). This is because, according to Second Circuit, "[i]t is clear that the FLSA requires wages to be paid in a timely fashion." *Rogers*, 148 F.3d at 57. Significantly, this Court recognized that while "courts have long interpreted the FLSA to include a prompt payment requirement . . . that requirement is not violated when an employer changes its pay schedule so long as this change: (a) is made for a legitimate business purpose; (b) does not result in an unreasonably long delay in payment; (c) is intended to be permanent; and (d) does not result in violation of the substantive minimum wage or overtime provisions of the FLSA." *Rosenbaum*, 658 F. Supp. 3d at 148 (citation omitted).

This Court further found that the "Amended Complaint sufficiently details how Defendants missed payments on multiple occasions without any legitimate business reason and alleges these late or missed payments were unreasonable." *Rosenbaum*, 148 F. Supp. 3d at 148. Critically, in addressing Defendants' exact same argument at the motion to dismiss stage, the Court recognized

3

that Defendants' argument that its payments to Plaintiff did not violate the minimum wage or overtime provisions of the FLSA was insufficient alone to defeat Plaintiff's prompt payment claims. *See id.* (citing *Rogers*, 148 F.3d at 58). Specifically, as this Court observed, but Defendants failed to even acknowledge in their opposition, the Second Circuit explained:

> [I]t is clear that, even if the facts are as the plaintiffs allege, the change did not have the effect of evading the substantive minimum wage or overtime provisions of the FLSA. But the plaintiffs also assert (1) that the change was not intended to be permanent; (2) that it resulted in an unreasonable delay in payment; and (3) that it was motivated by something other than a legitimate business purpose . . . **If the plaintiffs were able to prove these allegations, the city's actions would not satisfy the test outlined above**.

*Id.* (quoting *Rogers*, 148 F.3d at 58) (emphasis added). Indeed, in *Rogers*, the Court stated that "[t]he issue on this appeal is whether an employer can, without violating the FLSA, pay its employees later than the contractually agreed upon payday." *Rogers*, 148 F.3d at 54. Oddly, Defendants fail to even mention these objective standards in its opposition. Rather, Defendants simply double down on their same argument that Plaintiff did not prove allegations that she was never required to plead, that Plaintiff did not work compensable hours (besides the day they now concede) and therefore Defendants' untimely payments did not have the effect of evading the substantive minimum wage or overtime provisions of the FLSA. Fatal to Defendants' Opposition is their failure to dispute that there is **no dispute** that Defendants change was not intended to be permanent, resulted in an unreasonable delay to Plaintiff, and not made for a legitimate business reason.

Defendants concede that summary judgment is warranted for the workweek that Plaintiff indisputably worked at the school during the workweek of April 26, 2020, but Defendants failed to pay her any wages. *See* Defendants' Opposition, § III.C.i.b and d, pp. 9-10, 17-18. During this

week, Defendants' failure to timely pay Plaintiff her wages clearly satisfies all four objective standards, because it additionally had the effect of evading the FLSA's minimum wage.

Plaintiff also proved, as Defendants do not dispute, that Defendants failed to timely pay her wages on April 3, 2020 (*see* Counterstatement of Fact ("CSOF"), ¶¶ 54, 68, 72), April 10, 2020 (*see* CSOF, ¶¶ 59, 68), April 17, 2020 (*see* CSOF, ¶¶ 60, 69), April 24, 2020 (*see* CSOF, ¶¶ 61, 70), May 1, 2020 (*see* CSOF, ¶¶ 62, 71), May 8, 2020 and May 15, 2020 (*see* CSOF, ¶¶ 47-48), May 22, 2020 (*see* CSOF, ¶¶ 75, 78), May 29, 2020 (*see* CSOF, ¶¶ 76, 78), and June 5, 2020 (*see* CSOF, ¶¶ 77, 78-79, 99).

During these workweeks, Plaintiff demonstrated that the payments were not made for a legitimate business purpose, constituted an unreasonable delay, and was not intended to be a permanent change in Plaintiff's pay schedule. *See* Plaintiff's Motion, § I.A.3, pp. 13-15. In fact, Defendants do not even oppose any of Plaintiff's arguments in support of these three objective standards. This is because not only is the record clear that Defendants failed to pay Plaintiff *any* wages on *each* proceeding pay date until May 8, 2020, but also that Defendants' May 8 payment of all of Plaintiff's outstanding wages occurred only *immediately after* Defendants represented to the DOL that Plaintiff was "PAID THROUGHOUT" and was "EMPLOYED FULL TIME" by the School. CSOF, ¶¶ 38-40, 47-51, 63, 74-78.[1]

Defendants cite *Hosking v. New World Mortg., Inc.*, 570 F. App'x 28, 31 (2d Cir. 2014) in support of their argument that Plaintiff has the burden of proving that she performed work "in order to prevail on her prompt payment claim." Defendants' Opposition, § III.C.i.b, p. 10. But that case had nothing to do with FLSA prompt payment claims and dealt solely with FLSA overtime

---

[1] Paragraph 39 mistakenly states that "Rabbi Levi correspondence in writing on the DOL Notice and faxed it to the New York State Department of Labor," which was meant to state "Rabbi Gewirtz." Paragraph 40 clarifies this error as it correctly identifies Rabbi Gewirtz.

claims. Regardless of Defendants blatant attempt to disregard this Court's earlier decision, it previously recognized that "the instant Complaint does not allege overtime claims in violation of the FLSA but rather contends Defendants violated the Act by failing to issue prompt payment." *Rosenbaum*, 658 F. Supp. 3d at 147. Therefore, to argue that Plaintiff had the burden to prove overtime plainly contradicts the Court's ruling.

In light of the undisputed fact that Defendants explicitly represented to the DOL that Plaintiff was still employed "FULL TIME" and was and would continue to be paid, in order to keep her on payroll and disqualifying her from unemployment benefits, Defendants conspicuously reduce their response to one paragraph. *See* Defendants' Opposition, § III.C.i.b, p. 14. Tucked in a footnote, Defendants argue that Defendants' representation "did not prevent Plaintiff from using her time during the Covid-19 shutdown to do whatever she wished." *Id*. at n.5. The record establishes, however, that Plaintiff was a fifteen-year employee, that the School continued to pay all of its employees, that the School had her perform work on April 26, 2020 in order to implement its home learning program, that Defendants specifically told Plaintiff that she was not unemployed, and that the School told both Plaintiff and the DOL that she was still employed and would continue to be paid. CSOF, ¶¶ 1, 31, 35-36, 40, 43.

Based on the foregoing undisputed facts, Defendants' argument that they could pay Plaintiff's wages on whatever schedule it wanted despite their decision to continue to pay Plaintiff her wages contravenes the FLSA's "primary purpose: 'to protect certain groups of the population from substandard wages and excessive hours' as a result of 'unequal bargaining power as between employer and employee.'" *Shuler v. Liberty Consulting Servs., Ltd.*, 2022 WL 1552039, at * 5 (E.D.N.Y. Apr. 4, 2022) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945)). Not only do Defendants admit that they represented to Plaintiff and the DOL that Plaintiff was still

6

employed, but the record is also clear that because Defendants told her to do so, Plaintiff wrote to the DOL to inform it that she was in fact still employed and requested to no longer receive benefits. CSOF, ¶¶ 40, 43-44, 46. This does not entitle an employer to unilaterally decide when to pay its employee, which is a textbook example of taking advantage of unequal bargaining power.

The fact that no genuine dispute of facts exist regarding Defendants' failure to promptly pay Plaintiff her wages on these dates without any argument that (1) the delay was unreasonable; (2) the business reason was not legitimate; and (3) the change was not intended to be permanent, clearly warrants summary judgment in Plaintiff's favor on her prompt payment claims.

## III. DEFENDANTS FAIL TO PROVIDE ANY SUPPORT FOR THEIR ARGUMENT THAT THE WAGES PAID TO PLAINTIFF ARE NOT "WAGES" UNDER THE FLSA/NYLL

Pursuant to 29 U.S.C. § 203(m), the FLSA's definition of the term wage is as follows: 'Wage' paid to any employee includes the reasonable cost ... to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees. This is separate from the definition of "regular rate," which is defined in 29 U.S.C. § 207(e). The regular rate definition is used to calculate the overtime rate, as pursuant to 29 U.S.C. § 207(a)(1), an employer must pay working hours exceeding forty "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

In Defendants' CSOF, Defendants admit that the School paid Plaintiff her wages in three separate checks, one for office salary, one for rent, one for groceries. CSOF, ¶ 11. Discovery also established that Defendants paid Plaintiff's salary and grocery checks on a weekly basis (due on Fridays), and her rent check on a monthly basis (due the Friday following the 1st of each month). CSOF, ¶¶ 12-16. Defendants also admit that Plaintiff's weekly checks were in the amounts of

$699.34 and $325.00 gross, with her monthly rent check in the amount of $1,545.00 gross. CSOF, ¶¶ 17-19.

Despite the foregoing admissions, Defendants argue in their brief that "Plaintiff's [Statement of Fact] repeatedly characterizes payments as 'wages' and/or 'due,' which are legal conclusions" and that "the payments in issue were not 'wages' that were 'due' (*i.e.,* payments to which Plaintiff had a legal entitlement) under the FLSA and the NYLL because they were not payment for compensable work." Defendants' Opposition, § III.B, pp. 5-6. Thus, Defendants take the absurd position in their opposition that Defendants' payments to Plaintiff, who they do not dispute continued to be an employee of the School, were somehow not "wages."

Tellingly, Defendants' Opposition is *completely* silent as to what these payments to Plaintiff were, if they were not wages. Indeed, despite repeatedly arguing that these employer payments to their employee were not wages, Defendants fail to provide any legal support concerning how these payments, and the payments that Defendants did not dispute that they made to all of their employees, were not wages. Defendants posit that the School's "payments to Plaintiff during the Covid-19 shutdown fall squarely within the payments described in 29 C.F.R. § 778.218, titled 'Pay for certain idle hours.'" Defendants' Opposition, § III.C.i.b, p. 12. This argument *clearly* misses the mark for two reasons. One, this regulation deals with exclusion of certain pay from the regular rate under § 207(e)(2) but does not exclude these payments from the FLSA's definition of wages. Two, the regulation explicitly excludes from its definition of "Failure to provide work" a "reduction in work schedule" and "ordinary temporary layoff situations." 29 C.F.R. § 778.218(c). Because "Other similar cause" refers to payments made for "absence due to factors like holidays, vacations, sickness, and failure of the employer to provide work" § 29 C.F.R. § 778.218(d), the School's payments to Plaintiff clearly does **not** fall within this definition. Indeed,

Defendants chose not to furlough their employees, they undisputedly chose to continue pay them their wages. Defendants do not dispute this material fact.

Regardless of Defendants' failure to argue exactly how these payments fall outside of the definition for wages pursuant to 29 U.S.C. § 203(m), the record demonstrates that Defendants did in fact make these payments as wages to Plaintiff. First, in their cross-motion for Summary Judgment, Defendants based their **<u>entire</u>** justification in terminating Plaintiff based upon her application for unemployment benefits from the DOL. *See* Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1, ¶¶ 28-29 ("Defendants' SOF") (emphasis added). Thus, Defendants are egregiously arguing two contradictory points: (1) that Plaintiff earned more than $504 per week; and (2) that Plaintiff earned no wages because she did not work compensable time. In fact, the DOL's Benefit Rate Calculator specifically states as follows: "Enter your gross earnings for each of the calendar quarters. Gross earnings are your **<u>wages</u>** before taxes and other deductions." https://ux.labor.ny.gov/benefit-rate-calculator/ (last visited June 25, 2024) (emphasis added).[2] Defendants cannot argue that their payments are wages only for unemployment application purposes and but not pursuant to the FLSA.[3]

Second, Defendants do not dispute that they represented to the DOL that they were continuing to pay Plaintiff her wages, confirming to the DOL that Plaintiff "HAS BEEN PAID THROUGHOUT and WAS AND IS EMPLOYED FULL TIME." CSOF, ¶ 40. Defendants also admit that Defendant Levi told Rabbi Gewirtz to tell Plaintiff that she was not unemployed after Rabbi Gewirtz received the DOL notice. CSOF, ¶ 43. Defendants further admit that it was only

---

[2] A court can take judicial notice of public records from a website of a public entity. *See Koublani v. Cochlear Ltd.*, 2021 WL 2577068, at *5 (E.D.N.Y. June 23, 2021).

[3] Moreover, Defendants even refer to the office salary checks as "Wage Checks." Defendants' SOF, p. 8.

after this representation, on May 8, 2020, that Plaintiff received an envelope from Defendants containing her past due wages through May 1, 2020. CSOF, ¶ 63.

Third, Defendants also represented to the federal government that it would continue to pay Plaintiff and all of its employees' wages under the Paycheck Protection Program ("PPP") established pursuant to the Coronavirus Aid Relief Economic Security Act (CARES Act). According to the PPP Loan Data, which is public record, Defendants were granted a $625,292.00 federal loan on April 30, 2020 (eight days before she was paid), which the School represented was for the following expenses: Payroll. https://www.federalpay.org/paycheck-protection-program/bais-yaakov-drav-meir-brooklyn-ny (last visited June 25, 2024). Therefore, Defendants specifically and solely represented in their PPP application that they were using the money for payroll, which was specifically defined as: Payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation. *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20813 (April 15, 2020) ("f. What qualifies as 'payroll costs?'").

Fourth, the paystubs that Defendants provided to Plaintiff show that Defendants continued to withhold federal and state taxes from Plaintiff's salary pay. CSOF, ¶¶ 56, 88, 92, and 94. This withholding is based upon Defendants' compliance with Internal Revenue Code § 3402, which requires that absent certain exceptions, "every employer making payment of wages shall deduct and withhold upon such wages a tax determined in accordance with tables or computational procedures prescribed by the Secretary." 26 U.S.C.A. § 3402. Therefore, Defendants withheld taxes on the basis that its payments to Plaintiff were wages.[4]

---

[4] Moreover, the Supreme Court has held that severance payments, which are not based on compensable time are considered wages, because wages are defined as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium

**IV.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER NYLL
<u>UNTIMELY PAYMENT CLAIMS</u>**

The Second Circuit recently reiterated that NYLL § 191 guarantees "that the wages the

employer and employee have 'agreed' upon be paid in a 'timely' manner again according to the

'terms of [the employee's] employment.'" *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 516 (2d Cir.

2022) (citation omitted); *see Campbell v. Empire Merchants, LLC*, 2018 WL 5456666, at *7

(E.D.N.Y. Aug. 27, 2018) (recognizing that "New York State courts and the Second Circuit have

indicated that § 191 does not provide a cause of action for wages altogether withheld, **<u>as opposed</u>**

**<u>to wages not timely paid</u>**") (emphasis added).

This Court previously held that "[t]he NYLL similarly requires that covered employees are

paid in accordance with the agreed terms of employment and the NYLL, as with the FLSA,

similarly requires prompt payment of due wages." *Rosenbaum*, 658 F. Supp. 3d at 147 (collecting

cases). Specifically, "[e]mployers must pay the wages for clerical and other workers 'in accordance

with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay

days designated in advance by the employer.'" *Karupaiyan .v CVS Health Corp.*, , 2021 WL

4341132, at *29 (S.D.N.Y. Sept. 23, 2021) (quoting NYLL 191(1)(d)).

Plaintiff here is seeking wages agreed that her and her employer agreed upon that she had

been receiving for approximately 15 years, not a Covid-19 sick leave benefit. Indeed, Defendants

admit they continued to pay all of their employees following the School's closure. CSOF, ¶ 31.

As additionally provided in detail in Plaintiff's Opposition to Defendants' Motion for

Summary Judgment, although New York courts are currently split as to whether NYLL § 191,

together with NYLL § 198, confers a private right of action, "every court within this Circuit that

---

other than cash." *United States v. Quality Stores, Inc.*, 572 U.S. 141, 146 (2014) (citing 26
U.S.C.A. § 3121(b)).

has confronted the split in appellate authority has remained persuaded by *Vega*" that it does. *Cooke v. Frank Brunckhorst Co., LLC*, 2024 WL 2263087, at *8 (E.D.N.Y. May 18, 2024).

Thus, as Plaintiff has demonstrated *supra*, because Defendants do not dispute that they failed to pay Plaintiff on a timely basis in accordance with the agreed-upon terms of Plaintiff's employment, summary judgment on Plaintiff's NYLL is also warranted.

## V.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER WAGE STATEMENT CLAIMS

As addressed in Plaintiff's Opposition to Defendants' Motion for Summary Judgment, multiple courts have held that "allegations [concerning downstream injuries] are not necessary to supply standing, and plaintiffs have standing to assert these claims." *Bueno v. Buzinover*, 2023 WL 2387113, at *2 (S.D.N.Y. Mar. 7, 2023). Here, Defendants do not dispute that they did not provide Plaintiff with wage statements on each pay day that accurately listed Plaintiff's hours each week or provide any wage statements that included the amounts paid to Plaintiff for groceries or rent. CSOF, ¶¶ 101-103. Accordingly, Plaintiff is entitled to summary judgment on her NYLL § 195(3) claims.

**<ins>CONCLUSION</ins>**

For the reasons stated herein, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Partial Summary Judgment in its entirety.

Dated: White Plains, New York
      July 1, 2024

                              Respectfully submitted,

                              _____
                              Jeffrey R. Maguire